**UNITED STATES of America**

v.

**Michael J. HOROWITZ.**

**Crim. A. No. 72–677.**

United States District Court,
E. D. Pennsylvania.

May 17, 1973.

John F. Penrose, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Thomas B. Rutter, Philadelphia, Pa., for defendant.

## OPINION AND ORDER

HUYETT, District Judge.

The Court presently has before it a petition for determination of the mental competency of defendant, Michael J. Horowitz, to stand trial. Defendant is charged in a three-count indictment with violations of Int.Rev.Code of 1954, § 7206[1] and 18 U.S.C. § 2.[2] The United States Attorney, on March 27, 1973 submitted a petition to determine competency as required by 18 U.S.C. § 4244.[3] The Court has since held two hearings at which the testimony of three psychiatrists and defendant's wife was taken.

Defendant was indicted along with his former business partner, Irving L. Margolis. They are accused of wilfully and knowingly making and subscribing or aiding, abetting, assisting or causing the making and subscribing to false income tax returns for their business, Carlton Plastics, Inc., for the fiscal years ending in 1966, 1967 and 1968.[4] The alleged falsity involved overstating the purchases made and commissions paid during each of these years when they well knew that the amounts were less than they claimed.

The Court held an initial hearing on April 5, 1973. At that time there was

1. Any person who—
   (1) *Declaration under penalties of perjury.*—Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter . . . shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $5,000, or imprisoned not more than 3 years, or both, together with the costs of prosecution.

2. Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal. . . .

3. 18 U.S.C. § 4244 in pertinent part provides:
   Whenever after arrest and prior to the imposition of sentence or prior to the expiration of any period of probation the United States Attorney has reasonable cause to believe that a person charged with an offense against the United States may be presently insane or otherwise so mentally incompetent as to be unable to understand the proceedings against him or properly to assist in his own defense, he shall file a motion for a judicial determination of such mental competency of the accused, setting forth the ground for such belief with the trial court in which proceedings are pending. Upon such a motion or upon a similar motion in behalf of the accused, or upon its own motion, the court shall cause the accused, whether or not previously admitted to bail, to be examined as to his mental condition by at least one qualified psychiatrist, who shall report to the court. For the purpose of the examination the court may order the accused committed for such reasonable period as the court may determine to a suitable hospital or other facility to be designated by the court. If the report of the psychiatrist indicates a state of present insanity or such mental incompetency in the accused, the court shall hold a hearing, upon due notice, at which evidence as to the mental condition of the accused may be submitted, including that of the reporting psychiatrist, and make a finding with respect thereto. . . .

4. Irving L. Margolis, on March 26, 1973, pleaded nolo contendere to Count III of the indictment.

testimony concerning defendant's psychiatric condition from two psychiatrists, Dr. James W. Thrasher and Dr. Stanley W. Conrad, and from defendant's wife. The Court also received into evidence certain letters or reports from other doctors who had treated the defendant over the past three and one-half years.

The evidence received at the first hearing indicated that defendant began to have psychiatric difficulties shortly after an automobile accident in the Fall of 1968. According to a letter of Dr. M. Lawrence Spoont, a psychiatrist who first saw defendant in September, 1969, the condition was a depressive reaction which had become progressively worse over the ensuing months and had incapacitated defendant. Defendant undertook "intensive psychotherapy" with Dr. Spoont from September 1969 to December 1969, when he went to Florida. Dr. Spoont saw him on several occasions thereafter, with the last visit on March 31, 1972.

In November 1971, defendant and his wife moved to Palm Beach, Florida. Defendant went to see Dr. Jose Almeida on May 5, 1972. He continued to see Dr. Almeida for supportive therapy until February 1973 when he first visited Dr. Conrad. He has consulted with Dr. Conrad on four occasions, including once at the request of defendant's attorney for purposes of these proceedings. The last psychiatrist to see defendant prior to the first hearing was Dr. Thrasher who examined him at the request of the Government attorney, and whose conclusions were the basis of the Government's petition.

The testimony of Doctors Thrasher and Conrad at the hearing on April 5, 1973 [5] was substantially the same. Dr. Thrasher testified that during their session together the defendant was "well dressed, very tense, very anxious, very impatient." He described Horowitz as "despondent, depressed," and said that "tears came to his eyes frequently and, on several occasions, would burst into sobs and weeping." During the interview Horowitz expressed bad feelings about himself—feelings of worthlessness, ineptness, childishness, unworthiness and desire for self-destruction, which had once resulted in a suicide attempt. Defendant complained to the doctor that he could not make even the simplest decisions and that he was not worthy of employment. The doctor testified that during the interview the defendant exhibited some difficulty in focusing on the questions and a great desire to escape from the issues at hand.

Dr. Thrasher stated his opinion that defendant was incompetent to stand trial. He expressed doubt that defendant would be able to withstand the rigors of trial which might increase his self-destructive tendencies and lead to further decomposition and significant problems. Dr. Thrasher also considered it unlikely that Horowitz could take the witness stand and testify in an "effective, descriptive manner regarding his business activities and the matters surrounding [them]." This conclusion was based on defendant's difficulty in relating during the interview. Dr. Thrasher was not optimistic about defendant's prognosis in the immediate future.

After stating that he was willing to rely on Dr. Thrasher's testimony, defense counsel called Dr. Conrad to the stand when the Court indicated it would like to hear his testimony. Dr. Conrad was in general agreement with Dr. Thrasher. He testified that he had seen the defendant on four occasions including once at defense counsel's request. He read into the record a report which he submitted to defense counsel. In that report he said that defendant was "emotionally labile, . . . depressed, suicidal, self-decpreciatory (sic), un-

---

5. Defendant waived his presence at this hearing on the advice of his own psychiatrist, Dr. Conrad, who did not believe that it would be desirable for him to hear testimony concerning his condition, an opinion concurred in by Dr. Thrasher. At the request of the Court defense counsel explained to him his right to be present and defendant waived his presence on the record.

able to make decisions" and that he suffered from "loss of self-confidence and fear of loss of control." He characterized the defendant in the report as a person who appears to get along when life is calm and unruffled but who falls apart if the most insignificant complication appears. In the report Dr. Conrad concluded that a trial situation would be very disturbing to the defendant and that he might collapse under even mild interrogation.

On the witness stand Dr. Conrad reiterated these findings and conclusions. He said that the defendant was emotionally very sick and suffered from depression, including suicidal tendencies, and fears of worthlessness, and that defendant was not capable of assisting in his own defense. On examination by the Court Dr. Conrad explained that defendant would become upset and would not be able to participate. He said, however, that defendant was not insane and that he believed defendant understood the proceedings against him.

The last witness at the first hearing was Katherine Horowitz, the wife of the defendant. She testified that she viewed her husband's condition as "a complete nervous and emotional breakdown." He was not able to stand up under the slightest strain and "he couldn't do anything" if any problems arose. He got along so long as problems did not arise. Mrs. Horowitz described their life in Florida as "a very pleasant life". They entertain people, play tennis and bridge, walk on the beach, go swimming and have a "rather normal" social life.

The letters and reports of Drs. Spoont and Almeida were admitted into the record. These reports basically agree with the testimony of Drs. Thrasher and Conrad concerning defendant's state of depression and inability to cope with stressful situations. They do not, however, deal specifically with the defendant's competency to stand trial.

The hearing on April 5, 1973 did not resolve the question of competency to the Court's satisfaction. The testimony of the psychiatrists was brief and conclusory and it did not demonstrate a familiarity by the witnesses with the legal standards. The Court, therefore, on April 11, 1973 arranged to have the defendant examined by Dr. Robert V. DeSilverio, a psychiatrist. In a letter to Dr. DeSilverio the Court briefly explained the charges against the defendant and the standards of competency to stand trial.[6] The examination took place on April 18, 1973 and a hearing was held on April 24, 1973. Dr. DeSilverio's examination of the defendant consisted almost entirely of taking his history. The session consisted of an interview during which the doctor gained impressions and made judgments from the defendant's answers and behavior. On the basis of this one and one-half hour interview Dr. DeSilverio found defendant competent to stand trial.

Dr. DeSilverio testified that during the interview the defendant exhibited a good memory concerning events in his past and present life. The doctor did not discover any impairment of memory

6. The letter to Dr. DeSilverio stated the standard contained in § 4244 and the Supreme Court test enunciated in Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (see infra, p. 9). It went on to explain these standards:
"A person cannot properly assist counsel unless he can advise counsel considering the facts and can testify on his own behalf concerning those facts—the primary assistance is revelation of facts.
"To properly assist in his own defense means to be able to remember events in general, to remember his part in these events, to relate them to counsel, to understand questions concerning them, to answer such questions, to understand and recognize these events when narrated by someone else, to recall details thereof, to discuss them with counsel, and to make counsel aware of the alleged discrepancies in the narration. Just because someone is oriented as to time, place and person, it does not follow that he is mentally competent in the Section 4244 sense. However, such orientation may be indicative of competency. Also, an accused person can have a serious mental illness and yet be competent to stand trial."

or of his capacity to relate the facts to his attorney. He also indicated a belief that the defendant understood the nature of the proceedings against him. The doctor said that during the interview the defendant never showed a response which was irrelevant. There was no evidence of any psychiatric condition which would deprive defendant of the capacity to testify and to generally assist in his own defense.

The only impediment which Dr. DeSilverio saw to defendant's proper participation was his emotional state. This observation was based on the fact that defendant at times loses his composure, breaks down and is unable to continue. The doctor testified that he did not believe this interfered with his capacity to assist in his own defense more than temporarily. He thought that this was not an entirely involuntary response by the defendant and that it was subject to some control. The doctor likened the breakdowns to a snowball, which once allowed to get started may be unstoppable, but which could be prevented in the initial stages. He foresaw incidents during a trial which would require a break in the proceedings but that these occurrences would most likely be temporary and manageable. Dr. DeSilverio stressed at several points that the defendant did not appear willing to cooperate and that he seemed unmotivated to control his emotions and responses. He suggested that firmness and an attempt to impress upon defendant the advantages of retaining control at trial might lessen the extent and seriousness of any disruptions.

█ During the April 24 hearing there was an episode in the courtroom which relates very specifically to this petition. As defense counsel began his cross-examination of Dr. DeSilverio, defendant covered his face with his hands and appeared to be crying. Defense counsel drew the attention of the Court and the witness to defendant and asked the defendant to remove his hands from his face. Defendant was visibly weeping and started to exclaim that the doctors had been trying to help him for four and one-half years. The Court then ordered that defendant be excused from the courtroom and Mrs. Horowitz assisted him out.[7] Dr. DeSilverio testified that he could have predicted such an occurrence and that he had taken such a possibility into account in his judgment that defendant is competent to stand trial. He termed the behavior an "overdramatization of stress" and stated his belief that the outburst was a result of defendant's disappointment in Dr. DeSilverio's conclusion that he was competent.

█ It is a denial of due process to try a defendant who is mentally incompetent to stand trial. Pate v. Robinson, 383 U.S. 375, 378, 86 S.Ct. 836, 15 L. Ed.2d 815 (1966). In enacting 18 U.S. C. § 4244 Congress has established a statutory procedure for the courts to follow in order to make this difficult and important determination. The procedures followed in the present case, while not in exact accordance with the terms of the statute, provided the necessary examination of defendant by a psychiatrist and a hearing.

A defendant is incompetent according to § 4244 if he is "unable to understand the proceedings against him or properly to assist in his own defense." The Su-

7. Although defense counsel at the beginning of this hearing again requested that the defendant be excused the Court refused this request. After this incident the defendant remained outside for some time while testimony was taken. He was then brought back into the courtroom where he again waived his presence after the Court explained his right to be present and he discussed the matter with his attorney. We realize that defendant should be present at a hearing such as this. See, United States v. Abrams, 35 F.R.D. 529 (S.D. N.Y. 1964); Martin v. Settle, 192 F.Supp 156 (W.D.Mo. 1961). For this reason we required defendant to remain in court during this hearing. After this outburst, and in view of the waivers by defendant and the advice of all three psychiatrists who testified, we believe his absence during such testimony was proper.

preme Court, in Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam) stated that competency requires more than an orientation to time and place and some recollection of the facts. The Court held that the test is

" . . . whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as a factual understanding of the proceedings against him."

This test has become the starting point for discussions of competency. E.g., United States v. Marshall, 458 F.2d 446 (2 Cir. 1972); Hansford v. United States, 124 U.S.App.D.C. 387, 365 F.2d 920 (1966); United States v. Sermon, 228 F.Supp. 972 (W.D.Mo.1964).

■ A person is not rendered incompetent merely because he is mentally ill to some degree, Hall v. United States, 410 F.2d 653 (4 Cir.), cert. denied, 396 U.S. 970, 90 S.Ct. 455, 24 L.Ed.2d 436 (1969), or is emotionally unstable, Crawn v. United States, 254 F.Supp. 669 (M.D.Pa.1966). Rather, competency goes to the ability to participate effectively in one's own case. The United States Court of Appeals for the District of Columbia described it thus:

"[Competency] denotes the intellectual and emotional capacity of the accused to perform the functions which are essential to the fairness and accuracy of a criminal proceeding."

Pouncey v. United States, 121 U.S.App. D.C. 264, 349 F.2d 699 (1965). The question is whether or not the mental abilities which are necessary to the construction and presentation of his defense are impaired. Hansford v. United States, supra, 365 F.2d at 922. He should be able to advise his counsel concerning the facts and, if need be, testify in his own behalf concerning those facts. United States v. Sermon, supra, 228 F. Supp. at 978. A court should consider whether the defendant's mental trend and stream of speech are sufficiently clear, coherent and adequate to permit communication with counsel. Johnson v. Settle, 184 F.Supp. 103, 106 (W.D.Mo. 1960).

■■ In a determination of competency the judge is the fact finder and the decision is a factual one. Johnson v. Settle, supra. The testimony of medical experts on the issue is only one factor, United States v. Sermon, supra, and rises no higher than the reasons on which it is based and is not binding on the court, Hodges v. United States, 408 F.2d 543, 535 (8 Cir. 1969). It is a determination which is not conducive to automatic formulae but which can be decided only on a case-by-case consideration of all the circumstances. See Hansford v. United States, supra, 365 F.2d at 923.

The issue of incompetence in this case revolves around defendant's ability to assist in his own defense and to consult rationally with counsel under the stress of trial. We do not understand the defendant to contend that either his memory of the events in question or his ability to understand the nature of the proceedings is impaired. No testimony of the doctors indicated that he did not have the ability to perform these functions. Dr. DeSilverio, in fact, explicitly stated that he discovered no incapacity to remember events or to understand and Dr. Conrad testified that he believes the defendant understands the proceedings.

The focus of our concern must be on the effect of a trial situation on the defendant's mental ability to understand the proceedings, to effectively communicate with his counsel and to testify if need be. There is testimony which indicates that defendant "falls apart" when faced with the slightest disturbance and that he cries often when under any stress. Defendant argues that the outburst at the second hearing is an example of what would occur during trial. Dr. Thrasher's testimony is offered to demonstrate that during trial the defendant would be unable to concentrate and focus on the issues and in testify-

ing would give irrelevant answers. Dr. Thrasher, however, did not supply the Court with any examples. Dr. DeSilverio's testimony contradicts Dr. Thrasher on the last point. He stated that the defendant did not give him any irrelevant answers although he did appear to have some difficulty concentrating.

All the doctors agree that at trial the defendant is likely to lose composure, break down under questioning and cry. Doctors Thrasher and Conrad appear to believe that this. is sufficient to render him incompetent. They stress that this may have a deleterious effect on defendant. Dr. DeSilverio in his testimony agrees that this will occur but does not believe that this interferes with his capacity to assist and to understand. He believes that defendant will still have the necessary abilities to perform the functions requisite to a fair adjudication, but that the process will simply be more laborious. It is important in considering Dr. DeSilverio's testimony to be aware of his belief that the defendant has the capacity to exert some control over his behavior which would permit a trial to proceed and also that defendant might respond to a firm admonition that it is in his best interest to do so.

█ The question of incompetency is one of degree, *Cf.* United States v. Stevens, 461 F.2d 317, 320 (7 Cir. 1972). There are obviously varying degrees of ability to testify, to assist counsel or to understand the proceedings, and it is only when that inability is of such degree as to satisfy the standards of *Dusky* that a defendant is incompetent. A criminal trial is difficult for any defendant and it is quite conceivable in any case that a defendant will be so emotionally shaken that testifying will be very difficult. As we understand competency it is only if the defendant is mentally or emotionally incapable of testifying in a rational manner that he should be adjudged incompetent. Doctors Thrasher and Conrad did not establish such inability but merely indicated that there would be outbursts which would interfere with the trial and during which the defendant would not be able to proceed rationally. Dr. DeSilverio agreed with this but believed that this would only make his testimony more laborious, not impossible. An example of such a possible occurrence took place during the second hearing when we observed the defendant during an outburst in the courtroom. This was disruptive but the defendant's wife was able to get him under control within a few minutes and take him from the courtroom. When he returned a short while later he appeared to understand what was said to him and spoke clearly to the Court.

█ We foresee the possibility, perhaps even the probability, that defendant may encounter some difficulty during trial in consulting with his attorney, understanding the proceedings and testifying because of his present emotional condition. We do not, however, believe that there has been any demonstration that this difficulty will rise to such a degree as to render him incompetent to adequately assist in his own defense. The testimony establishes that he has the present capacity to consult with his lawyer about the case and to understand the proceedings against him absent the stress of the trial situation. In an interview situation the defendant is able to clearly relate events without indication of delusion. We do not quarrel with the testimony of the psychiatrists that defendant is easily ruffled and overwhelmed by situations, but we do not believe that their testimony establishes the necessary degree of incapacity to perform the essential functions at trial. Conclusory statements by Doctors Conrad and Thrasher that defendant is incompetent because he will break down on the stand and encounter difficulty in testifying do not demonstrate the degree of impairment to render him incompetent. Dr. DeSilverio testified that defendant had the necessary capacity and that although his emotional condition would interfere at trial, it would

not so limit his capability to rationally consult, understand or testify that one would conclude he was incompetent to perform these functions. We believe that his testimony evidenced a better consideration and application of the legal standards of competency and therefore accord it greater weight. At this time we believe that defendant is competent to stand trial, and that, despite the likelihood of a less-than-perfect trial, the defendant will receive a fair trial in which he can rationally participate to a reasonable degree.