Bill Edward **STURGIS,**
Plaintiff-Appellant,

v.

Robert **GOLDSMITH, et al.,**
Defendants-Appellees.

No. 83–2281.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 14, 1984.

Decided Aug. 11, 1986.

Frederick Kay, Federal Public Defender, Phoenix, Ariz., for plaintiff-appellant.

Robert S. Golden, Asst. Atty. Gen., Phoenix, Ariz., for defendants-appellees.

Before WALLACE, FLETCHER and FERGUSON, Circuit Judges.

FLETCHER, Circuit Judge:

Bill Edward Sturgis, currently incarcerated in an Arizona state prison, appeals the judgment and order dismissing his petition for a writ of habeas corpus under 28 U.S.C. § 2254 (1982). We affirm in part, reverse in part, and remand for an evidentiary hearing.

## I. BACKGROUND.

On January 4, 1970, Sturgis returned home at one a.m. with an acquaintance, Mary Monsivias. For the next two hours, Sturgis tortured and eventually killed Monsivias by stabbing her repeatedly with a kitchen knife and strangling her with a wire coat hanger. The killing took place in the presence of Sturgis's roommate Pat Caudill. Immediately after the killing, Caudill summoned police officers who arrested Sturgis.

Sturgis was charged with first degree murder. He waived his right to a speedy trial and his counsel moved for a determination of his competency to stand trial. The court appointed two psychiatrists, Drs. Rubino and Kruchek, to examine Sturgis. A competency hearing was held on May 11, 1970, at which Sturgis was present. The county attorney and Sturgis's counsel submitted the matter on the two written reports of the court-appointed psychiatrists. The court found Sturgis incompetent.

On June 15, 1971, the court held a second competency hearing with Sturgis present. After reviewing reports by Dr. Cleary, the chief psychiatrist at the State Hospital, and Mr. Jensen, a social worker at the same institution, which suggested that Sturgis was feigning symptoms of mental illness, the court ordered additional psychiatric examinations. On July 29, 1971, again with Sturgis present, the court continued the competency hearing. Sturgis and several psychiatrists testified and were cross-examined by counsel. The court again found Sturgis incompetent to stand trial.

Sturgis was also present at a third competency hearing on May 15, 1972 at which the court heard testimony from three psychiatrists who had previously examined Sturgis. Because the psychiatrists disagreed sharply as to whether Sturgis suffered from a mental illness, the court appointed four more psychiatrists to examine Sturgis. The court received these psychiatrists' reports at a hearing at which Sturgis was not present. On June 11, 1974, the court found Sturgis competent to stand trial.

Sturgis's first trial ended in a mistrial. Before retrial, the court held another competency hearing in Sturgis's absence, based on counsel's submission of the matter on the written reports of Drs. Wellish and Tuchler, both of whom found Sturgis capable of assisting in his defense and of understanding the nature of the proceedings against him. The court found Sturgis competent.

At trial, Sturgis's roommate, Pat Caudill, testified about the killing. He testified that Sturgis exhibited some rather bizarre behavior during the killing: he referred to himself as "Geronimo," licked Monsivias's blood off the knife after stabbing her, and poured hot coffee over her many wounds. Psychiatrists testified for both the defendant and the state. As in the competency hearings, the experts disagreed sharply as to whether Sturgis was legally insane at the time of the killing. In June of 1975, a jury found Sturgis guilty of first degree murder. He was sentenced to life imprisonment. On direct appeal, the Supreme Court of Arizona affirmed his conviction. *State v. Sturgis*, 113 Ariz. 311, 553 P.2d 665 (1976).

Sturgis then filed his first § 2254 petition with the district court on November 23, 1976. The petition was denied. He then filed a petition asserting twenty grounds for post-conviction relief in the Superior Court. The petition was denied without a hearing. The Supreme Court of Arizona denied his request for review.

Sturgis subsequently filed a § 2254 petition in district court alleging the same

twenty grounds for relief advanced in the state habeas proceedings. The court appointed the Federal Public Defender's office to represent him. The court dismissed the petition.

Sturgis raises the following issues on appeal:

(1) Did the state court's instruction on insanity violate due process by placing the burden of proof on the defendant?

(2) Did the state court's instruction that intent to kill could be presumed from use of a deadly weapon violate due process?

(3) Did the testimony of certain psychiatrists violate the defendant's fifth amendment rights?

(4) Did the holding of a competency hearing without the defendant present violate his sixth amendment rights?

(5) Should the district court have held an evidentiary hearing to determine whether defendant was on drugs at the time of the trial and unable to assist in his defense?

(6) Was the defendant afforded effective assistance of counsel?

We conclude that only Sturgis's claim that he had a right to be present at his competency hearing has merit.

## II. DISCUSSION.

### A. *Jury Instructions.*

Under Arizona law, a defendant is presumed sane. However, if the defendant raises the issue of insanity the state must prove sanity beyond a reasonable doubt.

---

1. The court instructed:

A person charged with a criminal offense is presumed to be sane.

If you find [certain factors] you will find that he was legally sane. However, if you find [certain factors] you will find that he was legally insane.

Ladies and gentlemen, it is not necessary to establish as a defense any particular kind of insanity....

Ladies and gentlemen, it is not necessary that the defendant prove insanity before he is entitled to an acquittal. It is sufficient if the proof

---

*State v. Grilz,* 136 Ariz. 450, 666 P.2d 1059 (1983). Sturgis complains that the instructions improperly placed the burden of proving insanity on the defendant.[1]

The Arizona Supreme Court, overruling its earlier decision in *State v. Daniels,* 106 Ariz. 497, 478 P.2d 522 (1970), has recently held that it is error to give an instruction on the presumption of sanity in a case where the defendant has raised the defense of insanity. *State v. Grilz,* 136 Ariz. 450, 666 P.2d 1059 (1983). However, Sturgis did not challenge the constitutionality of these instructions at his state trial. Sturgis violated Arizona Rule of Criminal Procedure 21.3(c), which requires contemporaneous objections to jury instructions.[2] Failure to comply with Rule 21.3 is adequate under Arizona law to bar consideration of an objection unless it rises to the level of fundamental error. *State v. Grilz,* 136 Ariz. 450, 666 P.2d 1059, 1063 (1983). Under *Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977), such a procedural default in state court precludes litigation of the alleged error in federal court unless the petitioner can demonstrate "cause" for his failure to raise the question at state trial, and "prejudice" from the error.

The district court found that Sturgis had not shown that he was actually prejudiced by the presumption of sanity instruction because other instructions and argument by counsel made it clear to the jury that the State had the burden of proving Sturgis's sanity. We do not reach this issue because the record shows Sturgis cannot satisfy *Wainwright's* "cause" requirement. Sturgis claims that even though his counsel

of mental condition at the time of the alleged offense is sufficient to create in the minds of the jury a reasonable doubt....

2. Rule 21.3 provides that

[N]o party may assign as error on appeal the court's giving or failing to give any instruction or portion thereof or to the submission or the failure to submit a form of verdict unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.

was aware at the time of trial that Arizona placed the burden of proving sanity on the state, he could not possibly have known that failure to place the burden on the state could be a constitutional error until the decision of the Sixth Circuit in *Stacy v. Love,* 679 F.2d 1209, 1213 (6th Cir.1982), holding that even though the constitution does not require that a state assume the burden of proving sanity, once it adopts that rule it is constitutionally required to follow it.

*Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), forecloses Sturgis from establishing "cause" in this manner. In *Engle,* the state prisoners argued, as does Sturgis, that they could not have known at the time of their trials that the Due Process Clause addresses the burden of proving affirmative defenses. Without deciding "whether the novelty of a constitutional claim ever establishes cause for a failure to object," 456 U.S. at 131, 102 S.Ct. at 1573 (footnote omitted), the Court held that where the basis of a constitutional claim is foreshadowed by precedent, "and other defense counsel have perceived and litigated that claim, the demands of comity and finality counsel against labeling alleged unawareness of the objection as cause of a procedural default." *Id.* at 134, 102 S.Ct. at 1575 (footnote omitted). We find no circumstances in this case that would distinguish it from *Engle.*

Sturgis also complains that the following instruction allowed the jury to presume intent and relieved the prosecution of its burden of proving all elements of the crime: "Intent to kill may be presumed from use of a deadly weapon." This contention states a colorable claim for habeas relief under the due process clause. *See Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) (instruction that effectively shifts burden to defendant on element of the offense violates due process).

■ The district court, however, held the error was harmless beyond a reasonable doubt. We agree.[3] *Rose v. Clark,* —— U.S. ——, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986). The eye-witness's testimony presented overwhelming evidence of willfulness, deliberateness, and premeditation. When Sturgis came home with Monsivias, he announced his intention to kill her. He accomplished this aim gradually over a one and a half hour period, using strangling when stabbing appeared to be ineffective and later returning to the stabbing technique. Insanity was the only issue in this case. *See McGuinn v. Crist,* 657 F.2d 1107 (9th Cir. 1981) *cert. denied,* 455 U.S. 990, 102 S.Ct. 1614, 71 L.Ed.2d 850 (1982).

Sturgis contends the instruction was prejudicial because it allows presumption of the mental state (intent) and Sturgis's mental state was the critical issue here. Given the extensive evidence presented on insanity and the specific instructions on that issue, the jury could not have thought the instruction allowed it to presume Sturgis's sanity from the fact that he used a deadly weapon. The instruction at issue could not have affected the jury's verdict.

### B. *Psychiatrists' Testimony.*

■ Sturgis contends that his fifth amendment rights were violated by the testimony of two psychiatrists, Drs. Tuchler and Baker, who examined him to determine whether he was competent to stand trial. This claim is meritless. In *Estelle v. Smith,* 451 U.S. 454, 468, 101 S.Ct. 1866, 1875, 68 L.Ed.2d 359 (1981) the Supreme Court held that "[a] criminal defendant, who neither initiates a psychiatric evaluation nor attempts to introduce any psychi-

---

**3.** The district court found the *Wainwright* "cause" requirement inapplicable to the instructions on intent because an Arizona court would find fundamental error in the instruction that "intent to kill may be presumed from use of a deadly weapon" and would review the instruction even though there was no objection at trial.

Because we find the error harmless, we do not decide whether the district court correctly assumed that a finding of "fundamental error" negates the requirement of cause and actual prejudice. Nor do we decide whether the district court correctly interpreted Arizona law.

atric evidence, may not be compelled to respond to a psychiatrist if his statements can be used against him." However, once a defendant indicates his intention to invoke the insanity defense and present expert testimony on the issue, he may be ordered to submit to an examination by psychiatrists available to testify for the government. *Karstetter v. Cardwell*, 526 F.2d 1144 (9th Cir.1976).

The record reveals that Sturgis's attorney informed the court of his intention to assert an insanity defense in 1970 when petitioner was first committed to the mental hospital for observation. Drs. Tuchler and Baker restricted their testimony to a hypothetical question, based on Caudill's testimony about the killing, or to opinion based on information obtained after the notice of insanity defense. Accordingly, neither psychiatrist could have testified to information privileged under *Estelle*.

## C. *Right to be present at competency hearing.*

 A defendant has a constitutional right to be present at every stage of the trial where his absence might frustrate the fairness of the proceedings. *See Bustamante v. Eyman*, 456 F.2d 269, 271–74 (9th Cir.1972), *accord, Badger v. Cardwell*, 587 F.2d 968, 970 (9th Cir.1978); *see also United States v. Gagnon*, 721 F.2d 672, 675 (9th Cir.1983). Sturgis argues that the trial court's determination of his competency at a hearing held in his absence violated this constitutional right. We agree.

 A cardinal principle of our criminal justice system is that "after indictment found, nothing shall be done in the absence of the prisoner." *Lewis v. United States*, 146 U.S. 370, 372, 13 S.Ct. 136, 137, 36 L.Ed. 1011 (1892). This guarantee is triggered whenever the defendant's "presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge," unless the presence would be "useless, or the benefit but a shadow." *Snyder v. Massachusetts*, 291 U.S. 97, 105–07, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934).

A competency hearing is intricately linked to the fullness of a defendant's ability to defend against the charge. Its function is to ensure that no defendant is subjected to trial if his "mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense." *Drope v. Missouri*, 420 U.S. 162, 171, 95 S.Ct. 896, 903, 43 L.Ed.2d 103 (1975). Recognizing the constitutional dimensions of the competency hearing is not a novel undertaking. "The courts have long recognized that the constitutional right of a defendant to a fair trial includes not only his right to be physically present and to assist in his own defense, but also embraces his right to be present mentally as well." *United States v. Gundelfinger*, 98 F.Supp. 630, 631 (W.D. Pa. 1951). *See also* Note, *Incompetency to Stand Trial*, 81 Harv.L. Rev. 454, 457 (1967) (the competency requirement provides a meaningful way for a criminal defendant to exercise his constitutional rights: "the right to consult with counsel, the right to testify in one's own behalf, and the right to confront opposing witnesses."); *United States v. Swanson*, 572 F.2d 523, 526 n. 3 (5th Cir.), ("competency is an essential consideration in the fairness of the trial") *cert. denied*, 439 U.S. 849, 99 S.Ct. 152, 58 L.Ed.2d 152 (1978).

In *Bustamante*, we articulated the interests underlying the right to be present at trial. These interests apply with equal force to a pre-trial hearing exploring the defendant's very ability to assist in his own defense:

> The right to be present at trial stems in part from the fact that by his physical presence the defendant can hear and see the proceedings, ... and can participate in the presentation of his rights. But the right also rests upon society's interest in due process. As stated in *Hopt* [*v. Utah*, 110 U.S. 574, 4 S.Ct. 202, 28 L.Ed. 262 (1884)], "[t]he public has an interest in [the defendant's] life and liberty. Neither can be lawfully taken except in the mode prescribed by law." 110 U.S. at

579, 4 S.Ct. at 204. The defendant's right to be present at all proceedings of the tribunal which may take his life or liberty is designed to safeguard the public's interest in a fair and orderly judicial system.

456 F.2d at 274–75. Those interests in due process and fairness are fundamental to our adversary system. The adversarial nature of the system does not simply spring out full blown at trial. It commences earlier. For example, the Supreme Court has held that the Fifth Amendment's protection against compelled self-incrimination, which of course applies at pretrial custodial interrogations (*Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)), also applies to pretrial competency examinations. "The considerations calling for the accused to be warned prior to custodial interrogation apply with no less force to the pretrial psychiatric [competency] examination at issue here.... During the psychiatric evaluation, respondent assuredly was 'faced with a phase of the adversary system' and was 'not in the presence of [a] perso[n] acting solely in his interest.'" *Estelle v. Smith*, 451 U.S. 454, 467, 101 S.Ct. 1866, 1875 (quotations and brackets in original) (quoting *Miranda v. Arizona*, 384 U.S. at 469, 86 S.Ct. at 1624). Thus, the interests underlying the right to be present at trial apply to the right to be present at a pretrial competency hearing—a phase *after* the competency hearing of which the court in *Estelle v. Smith* spoke.

The competency hearing was a critical stage of Sturgis's trial. *Cf. Estelle v. Smith*, 451 U.S. at 467, 101 S.Ct. at 1875 (pretrial competency examination, which occurs prior to the in-court, competency hearing, was an adversarial stage). The defendant's demeanor and behavior in the courtroom can often be as probative on the issue of his competence as the testimony of expert witnesses. It is noteworthy that on both occasions when Sturgis was present at hearings to determine his competency, he was found incompetent; conversely, on both occasions when he did not attend, he was determined to be competent. We con-

clude that Sturgis had a constitutional right to be present. *See United States v. Horowitz*, 360 F.Supp. 772, 776 n. 7 (E.D. Pa.1973) (defendant should be present at hearing to determine competency to stand trial); *United States v. Abrams*, 35 F.R.D. 529, 532 (S.D.N.Y.1964), *aff'd on other grounds*, 357 F.2d 539 (2d Cir.1966); *cert. denied*, 384 U.S. 1001, 86 S.Ct. 1922, 16 L.Ed.2d 1014 (1966) ("absent sound medical or other reasons," defendant should be present at hearing to determine competency to stand trial); *Martin v. Settle*, 192 F.Supp. 156, 159 (W.D.Mo.1961) (due process violated when commitment hearing held in defendant's absence). *But c.f. United States v. Makris*, 398 F.Supp. 507, 509–11 (S.D.Tex.1975), *aff'd* on other grounds, 535 F.2d 899 (5th Cir.1976), *cert. denied*, 430 U.S. 954, 97 S.Ct. 1598, 51 L.Ed.2d 803 (1977) (no due process or Confrontation Clause violation to proceed with competency hearing when defendant's absence caused by seizure, and when his counsel had "specifically stated on the record that defendant [would be] of no assistance to him in conducting the hearing" and would merely be seated in the rear of the courtroom).

Although we determine that Sturgis was denied a federal constitutional right, we are unable from the record before us to determine whether the error was harmless. *See Chapman v. California*, 386 U.S. 18, 21–22, 87 S.Ct. 826–27, 17 L.Ed.2d 705 (1967). The written reports of the two psychiatrists are not a part of the record. We therefore reverse and remand to the district court for a hearing on whether the error was harmless. If the government can prove that Sturgis was, in fact, competent at the time of trial, the error will not require reversal of the conviction.

D. *Right to hearing on effect of medication.*

█ Sturgis argues that the district court should have held an evidentiary hearing on whether the medication he was taking during trial rendered him incompetent to assist in his defense. A hearing is nec-

essary where the evidence raises a *bona fide* doubt as to the defendant's competence. *See Pate v. Robinson*, 383 U.S. 375, 385, 86 S.Ct. 836, 842, 15 L.Ed.2d 815 (1966). The district court found the record "devoid of any evidence that would even suggest the need for a hearing." We agree. Sturgis testified at his state trial that he was on medication. However, he presented no evidence to the district court as to what drugs he took or how they might have affected his competence at trial. The district court's refusal to grant a hearing on this ground was not in error.

### E. *Effective assistance of counsel.*

■ Sturgis contends he was denied effective assistance of counsel because his attorney failed to object at trial to the errors that have been raised before the court.[4] To prevail on a claim that counsel's assistance was so defective as to require reversal of a conviction, the defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The proper standard for evaluating attorney performance is whether the assistance was reasonably effective under the circumstances. *Id.* 104 S.Ct. at 2064–67. Prejudice is shown when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 2068.

Applying these principles to the facts before us, we find that Sturgis was not prejudiced by any of the alleged deficiencies in counsel's performance at trial. The record reveals defense counsel put on a strong defense based on expert testimony and was diligent in cross examination.

We affirm in part and reverse and remand to the district court for further proceedings consistent with this opinion.

WALLACE, Circuit Judge, concurring in part and dissenting in part:

I concur in the majority's opinion except for Part C, in which the majority holds that a defendant is entitled to be present at a hearing on his competency to stand trial. From that holding, I dissent.

Whether due process and the sixth amendment grant a defendant the right to be present at a competency hearing is an open question in this circuit. Few courts have yet faced this issue. The one court that has thoroughly addressed the issue has held that the defendant's absence at such a hearing presents no constitutional deprivation. *See United States v. Makris*, 398 F.Supp. 507, 509–11 (S.D.Tex.1975), *aff'd*, 535 F.2d 899 (5th Cir.1976), *cert. denied*, 430 U.S. 954, 97 S.Ct. 1598, 51 L.Ed.2d 803 (1977) (*Makris*). The majority cites three district court opinions in support of its holding: *United States v. Horowitz*, 360 F.Supp. 772, 776 n. 7 (E.D.Pa.1973) (*Horowitz*), *United States v. Abrams*, 35 F.R.D. 529, 532 (S.D.N.Y.1964) (*Abrams*), *aff'd on other grounds*, 357 F.2d 539 (2d Cir.), *cert. denied*, 384 U.S. 1001, 86 S.Ct. 1922, 16 L.Ed.2d 1014 (1966), and *Martin v. Settle*, 192 F.Supp. 156, 159 (W.D.Mo.1961) (*Martin*). None of these cases, however, is on point. In *Martin*, the court in one-sentence, conclusory fashion held that a defendant was entitled to be present at a hearing in which he was being *committed* to an institution when his competency was in question. No commitment proceedings are involved here. The court in *Abrams* simply directed that in the known circumstances of that case the defendant *should*

---

4. Sturgis also claims he was denied a speedy trial because of his commitment to the mental hospital, that his statements made at the time of his arrest were coerced, that the state suppressed a psychiatric report favorable to him, that his statements made to witness Caudill while he was in the mental hospital were inadmissible, and that color photographs of the victim admitted at trial were prejudicial. We find none of these claims have merit and thus cannot support Sturgis's contention that his counsel's failure to raise them constituted ineffective assistance of counsel.

be present for the competency hearing. The court in *Horowitz,* while observing that a defendant generally *should* be present (citing *Martin* ), 360 F.Supp. at 776 n. 7, ordered the defendant from the hearing because of his uncontrolled outbursts. Thus, until this opinion, no court has held that a defendant's presence at a competency hearing is constitutionally mandatory.

The majority's analysis is fundamentally flawed because it presumes that a competency hearing is "a critical stage of Sturgis's trial." Maj. op. at 1109. Such a hearing, however, is a preliminary proceeding to determine whether the defendant is capable of participating *in* the trial. It is not part of the actual trial itself. This crucial distinction must be recognized in order to analyze Sturgis's claim.

A defendant has a "right to be present at all stages *of the trial* where his absence might frustrate the fairness of the proceedings," *Faretta v. California,* 422 U.S. 806, 819 n. 15, 95 S.Ct. 2525, 2533 n. 15, 45 L.Ed.2d 562 (1975) (emphasis added), but even this right is not absolute. *Illinois v. Allen,* 397 U.S. 337, 342–43, 90 S.Ct. 1057, 1060, 25 L.Ed.2d 353 (1970) (*Allen* ). Due process concerns are focused on the unfairness of going forward without the defendant as both an observant and a participant. *See Snyder v. Massachusetts,* 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934) (*Snyder* ). Sixth amendment concerns center on the right of a defendant both to confront his accusors and to assist his attorney or take over his own defense. *Allen,* 397 U.S. at 344, 90 S.Ct. at 1061.

These concerns are addressed in the context of competency hearings. First, it would be fundamentally unfair to require an incompetent defendant to stand trial. *Pate v. Robinson,* 383 U.S. 375, 378, 86 S.Ct. 836, 838, 15 L.Ed.2d 815 (1966). But more importantly, an incompetent defendant would not be capable of assisting counsel in his own defense. This latter pragmatic aspect is the principal concern of a competency determination. *See, e.g., United States v. Swanson,* 572 F.2d 523, 526–27

(5th Cir.), *cert. denied,* 439 U.S. 849, 99 S.Ct. 152, 58 L.Ed.2d 152 (1978).

The sixth amendment right of presence, however, does not come into play in a proceeding in which guilt or innocence is not being adjudicated. *See, e.g., United States v. Hayman,* 342 U.S. 205, 222, 72 S.Ct. 263, 274, 96 L.Ed. 232 (1952) (presence of defendant at § 2255 proceeding not required by sixth amendment). A hearing solely on competency does not involve guilt or innocence. It is instead a non-adversarial proceeding, *see, e.g., United States v. Tesfa,* 404 F.Supp. 1259, 1265 n. 9 (E.D.Pa.1975), *aff'd,* 544 F.2d 138 (3d Cir.1976), *cert. denied,* 430 U.S. 910, 97 S.Ct. 1185, 51 L.Ed.2d 588 (1977), "for the limited, neutral purpose of determining [a defendant's] competency." *Estelle v. Smith,* 451 U.S. 454, 465, 101 S.Ct. 1866, 1874, 68 L.Ed.2d 359 (1981) (*Estelle* ). The proceeding is "restricted to ensuring that [the defendant understands] the charges against him and [is] capable of assisting in his defense." *Id.*

A competency hearing is simply not a "critical stage" of the trial for purposes of the sixth amendment right of presence. Such "critical stages" only encompass those "critical *confrontations* of the accused by the prosecution at pretrial proceedings where the results might well settle the accused's fate and reduce the trial itself to a mere formality." *United States v. Wade,* 388 U.S. 218, 224, 87 S.Ct. 1926, 1931, 18 L.Ed.2d 1149 (1967) (emphasis added). The analysis must focus on "whether potential substantial prejudice to defendant's rights inheres in the particular *confrontation.*" *Id.* at 227, 87 S.Ct. at 1932 (emphasis added); *see also Cape v. Francis,* 741 F.2d 1287, 1297 (11th Cir.1984) (psychiatric examination on competency is not a " 'critical stage' of the aggregate proceedings" even when some of psychiatrist's testimony is introduced at trial against the defendant when no "prejudice —either actual or potential—" is shown).

Not only is there a lack of any "confrontation" involved, but there is no potential that "certain rights may be sacrificed or

lost." *Coleman v. Alabama*, 399 U.S. 1, 7, 90 S.Ct. 1999, 2002, 26 L.Ed.2d 387 (1970). The question of competency remains open throughout the trial, and may be raised (or even required to be raised) *sua sponte* by the court should circumstances warrant. *See de Kaplany v. Enomoto*, 540 F.2d 975, 979–80 (9th Cir.1976) (en banc), *cert. denied*, 429 U.S. 1075, 97 S.Ct. 815, 50 L.Ed.2d 793 (1977). This continuing ability to reconsider the issue de novo substantially mitigates any possibility that a defendant would be significantly prejudiced by a pre-trial competency hearing in his absence.

As a practical matter, a defendant's presence is not necessarily essential. Indeed, a defendant's presence may at times be detrimental to his interests because he may "be affected adversely by hearing testimony relating to his mental condition." *Johnson v. United States*, 293 F.2d 100, 102 (5th Cir.1961); *e.g. Horowitz*, 360 F.Supp. at 776 (defendant excluded from hearing after outbursts during testimony by psychiatrist). The majority declares that a "defendant's demeanor and behavior in the courtroom can often be as probative on the issue of his competence as the testimony of expert witnesses." Maj. op. at 1109. While this may be true in regard to proceedings in front of a jury deciding his guilt or innocence, a competency hearing entails different considerations because a defendant's demeanor and behavior "could be so easily contrived as to be of little persuasiveness in the light of all other evidence." *Makris*, 398 F.Supp. at 511.

The circumstances of this case highlight the lack of need for Sturgis's presence at the "hearing." The hearing consisted of the stipulated submission of two psychiatrists' reports, neither of which questioned Sturgis's competence. No testimony took place, obviating any possible need for his presence to "assist" in cross-examination. His competence remained open to question throughout the trial—just as it had been questioned several times before. His presence would have added nothing to the court's determination.

It appears to me that the majority's analysis, while vacillating between the right to presence and due process, can only be read as resting on some due process ground that Sturgis's absence gave the proceeding an "appearance of impropriety." This highly attenuated concern ignores the Supreme Court's dictates that due process does not require a defendant's presence even at trial "when [such] presence would be useless, or the benefit but a shadow." *Snyder*, 291 U.S. at 106–07, 54 S.Ct. at 332. The same teaching would be even more applicable at a competency hearing.

Due process concerns do not require a defendant to "be present every second or minute or even hour of the trial." *Snyder*, 291 U.S. at 116, 54 S.Ct. at 336. Instead, due process requires fairness, "but fairness is a relative, not an absolute concept." *Id.* Sturgis's presence at this particular hearing would be meaningless. Whether a defendant's presence at a full hearing under different circumstances would require different considerations cannot alter this fact. We have been instructed that "[t]he concept of fairness must not be strained till it is narrowed to a filament." *Id.* at 122, 54 S.Ct. at 338. I suggest that the majority has done so in this case and, therefore, I respectfully dissent.