John Milton LORD, Appellant,

v.

UNITED STATES GOVERNMENT, Appellee.

No. 12582.

United States Court of Appeals Fourth Circuit.

June 13, 1969.

**500**

John Milton Lord, pro se.

William Medford, U. S. Atty., Asheville, N. C.

Before BOREMAN, BRYAN and WINTER, Circuit Judges.

PER CURIAM.

John Milton Lord appeals from an order of the district court (Warlick, J.) denying relief after purporting to hold a hearing, at which the prisoner was not present, on his motion under 28 U.S.C. § 2255 to vacate sentence.

Lord was convicted on his plea of guilty in 1957 in the United States District Court for the Western District of North Carolina on charges of causing forged checks to be transported in interstate commerce in violation of 18 U.S.C. § 2314. He waived his right to assistance of counsel and, therefore, was not represented. He was sentenced to imprisonment for a term of ten years, to begin following completion of a two-year federal sentence earlier imposed on him in Georgia and then being served. Normally, Lord's sentences would have now expired but it appears from the record that at some time after 1961 he was released on parole and he is either now serving, or will be required to serve at some future time, the unexpired portion of the sentence now under attack which was reimposed for violation of parole.

Lord attacks his conviction on the grounds (1) that his waiver of counsel and guilty plea were not intelligently, understandingly, and voluntarily made, in that he had not been informed of his rights and did not understand the nature and consequences of the charges against him; and (2) that the district court was without jurisdiction to try him because the offenses were not committed within the district. A previous motion filed in 1961, which contained all of the present alleged grounds for relief except for the jurisdictional claim, was denied without a hearing. The district court dismissed the present motion, alternatively as successive and on the merits, again without a hearing.

Disposition of Lord's jurisdictional contention, (2) above, may be readily made since it is wholly without merit. He contends that the District Court for the Western District of North Carolina did not have jurisdiction to try him for the offenses since they were not committed within the Western District, all of the checks having been cashed and placed in commerce in the states of South Carolina, Georgia, and Florida. This contention is frivolous in the face of 18 U.S.C. § 3237, which provides in pertinent part:

a) Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

Any offense involving the use of the mails, or transportation in interstate or foreign commerce, is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and

prosecuted in any district from, through, or into which such commerce or mail matter moves.

There is no contrary statutory provision with regard to 18 U.S.C. § 2314 under which Lord was charged. Each of the checks involved was drawn on a bank in Charlotte, North Carolina, which is within the Western District. The cashing of those checks in other states therefore caused them to be transported in interstate commerce to the drawee bank.

■ However, Lord's contention, (1) above, that his waiver of counsel and guilty plea were not made understandingly and voluntarily raises serious and substantial questions which merit consideration. Lord bases his claim on the trial judge's alleged noncompliance with Fed.R.Crim.P. 11, which provided in 1957 as follows:

> * * *. The court may refuse to accept a plea of guilty, and shall not accept the plea without first determining that the plea is made voluntarily with understanding of the nature of the charge * * *.

The present version of Rule 11 is similar, except that it contains the additional requirements that the judge address the defendant "personally" and that the plea must be found to have been made "with understanding of * * * the consequences of the plea." In addition to the allegation of failure to comply with Rule 11, Lord affirmatively alleges that he did not in fact understand his rights, nor did he fully understand the nature of the charges and the consequences of appearing without counsel and entering a plea of guilty.

The district judge found, on the basis of the transcript of the trial proceedings, and on the further basis of Lord's prior experience with the courts and a letter written to him by Lord before the trial, that Lord fully understood his

rights and the charges with which he was confronted, because the files and records of the case showed that the plea and waiver were voluntary.[1]

The transcript reveals the following colloquy before acceptance of the plea:

ASST. U. S. ATTY.: If the Court please, Case No. 921, John Milton Lord. The defendant is in court and I understand he does not have an attorney.

THE COURT: Do you want a lawyer appointed to represent you, Mr. Lord?

THE DEFENDANT: No sir, I don't.

THE COURT: All right. Let it appear that the defendant John Milton Lord, a man more than twenty-one years of age, on being asked by the Court if he desired the services of an attorney states that he does not so desire. What will be your plea?

THE DEFENDANT: Plea of guilty, your Honor.

THE COURT: Pleads guilty. And enters a general plea of guilty to the bill as charged.

(Waivers are signed by defendant.)

ASST. U. S. ATTY.: If the Court please, this is a seven count bill of indictment. The defendant has been furnished with a copy of the bill. What is your plea, Mr. Lord?

THE DEFENDANT: Guilty.

We do not think that this inquiry complies with the requirements of Rule 11, either the 1957 version or as amended, effective July 1, 1966. Lord was asked whether he wished to have an attorney appointed, but he was not informed that if he desired an attorney and could not afford to hire one the appointment would be without cost to him. Nor was he allowed any length of time in which to make his decision. *See* United States v. Plattner, 330 F.2d 271 (2 Cir. 1964); Townes v. United States, 371 F.2d 930 (4 Cir. 1966). There was no

---

1. Upon receipt of this motion under 28 U.S.C. § 2255 the district court held a hearing but the petitioner was advised by the court that "under his petition no need appeared requiring his presence * * *." Because of the nature of the issues raised we hold that this so-called hearing was inadequate.

inquiry made as to whether he understood the nature of the charges against him, the effect of a plea of guilty, or the possible range of punishments that might be imposed. Nor was it explained to him that even though he might choose to plead guilty, counsel might be

> "of substantial value in developing and presenting effectively mitigating circumstances having relevancy to what is many times the most difficult part of a criminal case—the fashioning of appropriate punishment." Townes v. United States, *supra*, 934.

This last consideration is of significance in light of the fact that Lord did attempt to show mitigating circumstances after the Government presented its case.

We recognized in *Townes* that a showing of waiver does not require any "rigid ritual to be slavishly followed," 371 F.2d 930, 934, and that the area of inquiry was, and should be, flexible so as to allow individualized inquiry for each case. But there are nonetheless minimum standards below which any inquiry may not fall. In Aiken v. United States, 296 F.2d 604 (4 Cir. 1961), this court held that an inquiry into the circumstances surrounding the entry of a guilty plea under Rule 11 must, as a minimum, include an explanation of the charges and possible punishments, and inquiry into whether any threats or promises have been made, or other pressure brought to bear, to induce the plea. The inquiry made by the trial judge in the present case falls far short of those minimum requirements.

The danger always present when a district judge fails to make an adequate inquiry under Rule 11 is heightened in the present case, since Lord was without the assistance of counsel. Where the defendant appears without, and purports to waive, counsel for his defense, the responsibility of the district judge to see to the protection of his rights is manifestly increased. Almost ten years before Lord's trial, the Supreme Court referred at length to the court's duty in such circumstances:

" * * * A waiver of the constitutional right to the assistance of counsel is of no less moment to an accused who must decide whether to plead guilty than to an accused who stands trial. [Citations omitted.] Prior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered. Determining whether an accused is guilty or innocent of the charges in a complex legal indictment is seldom a simple and easy task for a layman, even though acutely intelligent. * * *.

" * * * It is the solemn duty of a federal judge before whom a defendant appears without counsel to make a thorough inquiry and to take all steps necessary to insure the fullest protection of this constitutional right [to counsel] at every stage of the proceedings. [Citations omitted.] This duty cannot be discharged as though it were a mere procedural formality. * * *

" * * * 'The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused—whose life or liberty is at stake—is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused.' To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of

allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered." Von Moltke v. Gillies, 332 U.S. 708, 721–724, 68 S.Ct. 316, 322, 92 L.Ed. 309 (1948).

Examination of the entire record of the case, in addition to the record of the inquiry conducted at the arraignment, fails to disclose any additional facts which would justify a finding that Lord intelligently and understandingly waived his right to counsel, or that he fully understood the charges against him and the consequences of a guilty plea. The letter referred to in the opinion of the district court is part of the record; it reveals that Lord did indeed expect to plead guilty, but it reveals nothing about his understanding of his rights and of the nature of the charges against him. Nor can Lord's prior court experience be deemed particularly relevant in light of his allegation that in none of the earlier proceedings had he ever been represented by counsel, and that in the proceeding here in question he was not even furnished with a copy of the indictment until after he was required to plead.

We turn now to the question of what remedy should be granted in this case on our finding that the requirements of Rule 11 were not satisfied at the arraignment. Heretofore we have declined to adopt a rule requiring rearraignment and a new opportunity to plead, as formulated in Heiden v. United States, 353 F.2d 53 (9 Cir. 1965). Instead we have held that the trial judge's failure to comply with the requirements of the rule requires a subsequent hearing, in which an adequate inquiry into the voluntariness of the plea can be made. Brokaw v. United States, 368 F.2d 508 (4 Cir. 1966).

The Supreme Court has now, prospectively, at least, resolved this conflict which has existed concerning the effect of a trial court's noncompliance with Rule 11, and the corrective procedure to be followed, in McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (April 2, 1968). The Court there held that " * * * a defendant is entitled to plead anew if a United States district court accepts his guilty plea without fully adhering to the procedure provided for in Rule 11." 394 U.S. at 463, 89 S.Ct. at 1163. In so holding, the Supreme Court approved the procedure previously adopted by the Court of Appeals for the Ninth Circuit in Heiden. However, we must now determine whether this procedural remedy is to be applied *retroactively* to guilty pleas which were improperly accepted prior to the decision in *McCarthy*.

For two reasons we conclude that *McCarthy* should not be applied retroactively and that the appropriate remedy to be provided in a case in which a plea of guilty was accepted before the date of the *McCarthy* decision and without full compliance with Rule 11 is to require a hearing by the district court to determine the voluntariness of the plea, as this court held in *Brokaw, supra*.

First, the *McCarthy* decision does not directly affect the substantive rights of federal criminal defendants, but instead prescribes an appropriate remedy where the requirements of Rule 11 have not been met. There is no conflict between our prior decisions and the Supreme Court's decision in *McCarthy* with regard to the standards to be observed in determining compliance or noncompliance with Rule 11; the conflict exists only as to the remedial procedure to be followed after ascertaining that the rule was violated. In this connection, the Supreme Court was careful to point out that its decision was based solely on its construction of the rule, not on a constitutional ground, and was

made pursuant to the Court's supervisory power over the lower federal courts. The Court further indicated that its principal reasons for approving the *Heiden* construction were: (1) concern with the practical difficulties of providing an efficacious remedy for a violation of Rule 11 by means of a subsequent voluntariness hearing; (2) the Court's belief that ordering rearraignment of the prisoner would more effectively insure *initial* compliance with Rule 11 which, in turn, would reduce the wasteful expenditure of valuable judicial time and effort required to process the frivolous attacks on guilty plea convictions that are encouraged when the original record is inadequate and proper disposition is rendered much more difficult. Although the first reason might be furthered by the retroactive application of *McCarthy*, we think, for reasons to be stated, that the resulting harm in so applying the ruling far outweighs the corresponding benefit to be derived.

Second, we believe that the retroactive application of *McCarthy* would have a substantial detrimental impact on the administration of justice. As the Supreme Court noted in *McCarthy*, pleas of guilty or nolo contendere resulted in approximately 82% of all convictions in federal district courts in 1968, a figure comparable to those for previous years. It is impossible to speculate in what percentage of those cases there may *not* have been acceptable compliance with Rule 11. Although it is to be hoped that the number would be small, based on past experience it would not appear insignificant; and, in many cases where there may have been full compliance with the rule, it may be difficult, if not impossible, to produce records which would so demonstrate, particularly in older

cases in which no appeal was ever taken, and transcripts of arraignment proceedings may be unavailable. There may be instances when such an impact might be justified by the compelling needs of the situation sought to be corrected. *See* Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). However, we do not think that this is such a case since prospective, rather than retroactive, application of the new rule does not leave remediless a prisoner in whose case the rule was not observed and followed.[2]

■ Accordingly, we hold that in any case in which a plea of guilty was accepted before April 2, 1969, without full compliance with the requirements of Rule 11, the defendant is not automatically entitled to rearraignment, but is entitled to a hearing to determine whether his plea was entered voluntarily and understandingly.

■ In the present case, Lord's guilty plea was accepted in 1957. We have found that there was no compliance with Rule 11 at his arraignment. Since in no proceeding, either at the arraignment or pursuant to either of his two motions under 28 U.S.C. § 2255, has there ever been a proper inquiry as to whether his plea was voluntarily and understandingly made, and whether he intelligently and understandingly waived his right to counsel, we conclude that he is now entitled to a hearing in which these questions properly can be determined.

Accordingly, the order of the district court is vacated and the case is remanded for a hearing. If the district court finds that the right to counsel was not intelligently waived or that the guilty plea was not understandingly and voluntarily tendered the conviction and sen-

2. Even the court rendering the decision in Heiden v. United States, 353 F.2d 53 (9 Cir. 1965), which was expressly adopted by the Supreme Court in *McCarthy*, has declined to apply the ruling retroactively. Castro v. United States, 396 F.2d 345 (9 Cir. 1968). There the court said that "The seeming inequity in fixing such a cut-off date is outbalanced by the factors of reliance and burden on the administration of justice which argue for prospective application only in other cases. See Stovall v. Denno, 388 U.S. [293] at 300–301, 87 S.Ct. 1967 [18 L. Ed.2d 1199]." 396 F.2d at 349.

tence under attack shall be vacated, the prisoner shall be rearraigned and such further proceedings shall be had as necessary and proper in the circumstances.[3]

*Vacated and Remanded.*

3. This opinion was written before the Supreme Court announced its decision in Halliday v. United States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (June 3, 1969), which confirms and approves the identical result reached by this court in the foregoing opinion as to the retroactive application of McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166 (April 8, 1969).