**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Calvin Woodrow BARFIELD,
Defendant–Appellant.**

No. 90–5204.

United States Court of Appeals,
Fourth Circuit.

Argued March 5, 1992.

Decided July 15, 1992.

John A. Dusenbury, Jr., Asheville, N.C., argued, for defendant-appellant.

Thomas R. Ascik, Asst. U.S. Atty., Asheville, N.C., argued (Thomas J. Ashcraft, U.S. Atty., Jerry W. Miller, Asst. U.S. Atty., on brief), for plaintiff-appellee.

Before MURNAGHAN and NIEMEYER, Circuit Judges, and RAMSEY, Senior United States District Judge for the District of Maryland, sitting by designation.

## OPINION

RAMSEY, Senior District Judge:

Calvin Woodrow Barfield appeals his conviction on three counts of interstate transportation of forged securities in violation of 18 U.S.C. § 2314. Finding no error by the district court, we affirm.

### I.

In 1988, defendant-appellant Barfield was charged in a superseding indictment with three counts of interstate transportation of forged securities in violation of 18 U.S.C. § 2314. Both the government and defense counsel moved for a pretrial psychiatric evaluation to determine appellant's mental condition at the time the offense was committed and to ascertain his competence to stand trial. By court order, Mr. Barfield was taken into custody and held for psychological and psychiatric examinations.

In June, 1989, the Warden of the Federal Correctional Institution in Butner, North Carolina [1] reported to the Court that at the time of the commission of the offense, appellant was suffering from a mental disease or defect which rendered him unable to understand the nature and consequences of his actions. In addition, the doctor concluded that Barfield was unable to assist his attorney in preparing his defense. The doctor diagnosed the defendant as suffering from primary degenerative dementia of the Alzheimer's type.

On August 17, 1989, Magistrate Judge Paul Taylor held a hearing to determine appellant's competence to stand trial. Barfield was not present at the hearing, but he was represented by his court appointed lawyer, Mr. Charles Morgan. In response to the Court's inquiry concerning Barfield's presence, Mr. Morgan informed the Court that he had not sought a waiver because appellant "was found to be incompetent by the authorities at Butner." Mr. Morgan then attempted to waive Barfield's appearance for him. The court heard testimony from a psychologist at Butner which supported the earlier diagnosis of incompetence to stand trial. Because the doctor suspected that Barfield was feigning mental illness, the court continued the hearing for 60 days without finally determining appellant's competence to stand trial.

In a significant deviation from their earlier diagnosis, defendant's doctors reported to the court just prior to the next hearing that Mr. Barfield was mentally competent. At the second competency hearing on November 9, 1989, the court granted the motion of appellant's counsel for an independent psychological evaluation, and deferred ruling on the issue of Barfield's competence until additional information was compiled. Barfield was present at this second hearing and at the third competency hearing which was held on March 7, 1990. At the last hearing, the Court concluded that Barfield was competent at the time of the commission of the offense and was competent to stand trial.

1. Mr. Barfield was held at that facility while the psychological examinations were conducted.

Appellant informed the district court on April 13, 1990 that he wished to proceed *pro se* and that he intended to rely on the insanity defense at trial. The court conducted another hearing in which it granted appellant's motion to represent himself at trial and retained Mr. Morgan as standby counsel. The trial commenced on July 9, 1990, and the jury returned a guilty verdict against appellant on all counts the next day.

On appeal, Barfield argues that (1) his absence from the first competency hearing violated his constitutional rights; (2) venue in the Western District of North Carolina was improper; (3) the court committed reversible error by failing to inquire of defendant whether he wanted the assistance of stand-by counsel during jury selection; and (4) the court improperly denied the defendant's motion for judgment of acquittal at the close of the government's case.

## II.

The central issue before us is whether defendant's absence at the competency hearing held on August 17, 1989 is grounds for reversal. Barfield argues that his exclusion from the August hearing deprived him of due process of law and of his right to a fair trial. Appellant relies primarily on *Sturgis v. Goldsmith*, 796 F.2d 1103 (9th Cir.1986), a Ninth Circuit case which held that a defendant has a constitutional right to be present at his competency hearing, a critical stage of his trial. In *Sturgis*, the defendant was present at three of five hearings held to determine whether he was competent to stand trial. After each of

those three hearings, the court concluded that the defendant was not competent. At two subsequent competency hearings held in the defendant's absence, the court revised its initial conclusion after hearing testimony from additional expert witnesses. The court determined on both occasions that the defendant was, in fact, competent to stand trial. On review of the district court's denial of the defendant's habeas corpus petition, the Ninth Circuit agreed with Sturgis that the trial court's determination of his competency at a hearing that he did not attend violated his "constitutional right to be present at every stage of the trial where his absence might frustrate the fairness of the proceedings." 796 F.2d at 1108. The court in *Sturgis*, however, stated that the doctrine of harmless error would preclude reversal if the defendant's absence from the competency hearing was not prejudicial. "If the government can prove that [the defendant] was, in fact, competent at the time of the trial, the error will not require reversal of the conviction." *Id.* at 1109.

We agree that a competency hearing is a critical stage of a defendant's trial.[2] Under this theory, Barfield's exclusion from the August 17, 1989 competency hearing violated his constitutional right to due process of law and his right to a fair trial.[3] Barfield's absence, however, must be deemed harmless error if he was in fact competent at the time of trial. *See* 796 F.2d at 1109. Appellant cannot establish that the court committed reversible error by proceeding with the hearing in spite of his absence because he is unable to offer any convincing evidence of the prejudice he

---

**2.** *But see United States v. Makris*, 398 F.Supp. 507 (D.C.Tex.1975), *aff'd*, 535 F.2d 899 (5th Cir. 1976), *cert. denied*, 430 U.S. 954, 97 S.Ct. 1598, 51 L.Ed.2d 803 (1977), in which the Fifth Circuit held that a criminal defendant did not have the right to be present at his competency hearing. The court found that neither Fed.R.Civ.P. 43, the confrontation clause of the Sixth Amendment, nor the due process clause of the Fifth Amendment confers the right to be present at a competency hearing. Despite their divergent approaches, the Fifth Circuit's rule in *Makris* and the Ninth Circuit's holding in *Sturgis* yield the same result when applied to the facts of this appeal. Under *Makris*, Barfield's absence from the August competency hearing would not war-

rant reversal of his conviction because he had no right to be present. Similarly, under *Sturgis*, a trial court commits only harmless error when it proceeds with a competency hearing despite the absence of a defendant who, like Barfield, is later proven to be competent to stand trial.

**3.** We need not reach the issue of the validity of Mr. Morgan's purported waiver of Barfield's presence because Mr. Morgan conceded at the August 17 competency hearing that he did not seek to secure a waiver from Barfield. In addition, our harmless error analysis obviates the need to reach the question of waiver.

allegedly suffered. Indeed, Barfield's only argument in support of the claim that his exclusion from the competency hearing was not harmless error is that the court's decision deprived him of the therapeutic benefits of the four months of "intensive psychiatric and psychological treatment" that he would have received pursuant to 18 U.S.C. § 4241(d)(1) if, after the August 17 hearing, the court had made the determination that Barfield was incompetent to stand trial. Appellant believes he was prejudiced because four months of treatment could have markedly improved his ability to represent himself at trial. Section 4241(d), however, only provides for diagnostic, and not therapeutic, treatment for a defendant who is found to be incompetent. Furthermore, rather than guaranteeing four months of "treatment," the statute explicitly states that upon a finding of incompetence, a defendant should be hospitalized for a period *"not to exceed* four months." 18 U.S.C. § 4241(d)(1) (emphasis supplied). Barfield's claim of prejudice must fail because the commitment order, which complied with the requirements of § 4241, merely postponed the final determination of the defendant's competency until the court had more information about the defendant's condition.

■ The record clearly demonstrates that the defendant's absence from the August 17 competency hearing was harmless error because the government has proven that Barfield was in fact competent at the time of trial. Rather than undermining Barfield's claim of incompetence, the testimony presented at the hearing tended to show that Barfield was not competent. In addition, unlike *Sturgis*, in which the trial court determined that the defendant was competent after both hearings held in his absence, the court did not make a final decision about Barfield's competency at the August 17 hearing. Instead, the magis-

trate judge continued that hearing for sixty days to enable doctors to further observe the defendant, to evaluate his condition, and to investigate the suggestion that the defendant was malingering. The final determination of the defendant's competence was made only after a competency hearing at which Barfield was present. Finally, the progressive nature of a disease like Alzheimer's would seriously impair a person's ability to manage complicated, detailed facts and sophisticated legal principles; appellant's ability to represent himself at trial in a complex case is further proof of the fact that he was competent to stand trial. Nothing in the record supports Barfield's argument that he was deprived of due process and a fair trial. The court committed harmless error by conducting the August 17 hearing, at which no final determination of competency was made, in the defendant's absence.

### III.

■ Appellant also argues that we should reverse his conviction because venue in the Western District of North Carolina was improper. Under 18 U.S.C. § 3237(a),[4] jurisdiction over the prosecution of a continuing offense lies in any district in which any portion of the offense occurred. In *Lord v. United States*, 412 F.2d 499 (4th Cir.1969), we confronted a similar challenge to the venue of a prosecution for the interstate transportation of forged securities, the same offense for which Barfield was convicted. In view of the clear mandate of § 3237, we characterized the defendant's argument in *Lord* as "frivolous" and "wholly without merit." 412 F.2d at 500. In this case, venue was clearly proper in the Western District of North Carolina, the district where the bank upon which the checks were drawn is located.

---

4. 18 U.S.C. § 3237(a) provides:
   [A]ny offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

   Any offense involving the use of the mails, transportation in interstate or foreign commerce, ... is a continuing offense and ... may be inquired of and prosecuted in any district from, through, or into which such commerce, mail matter, or imported object or person moves.

## IV.

■ Barfield also claims that the district court committed reversible error by failing to ask the appellant before jury selection whether he wanted assistance of standby counsel. When the magistrate judge granted his motion to proceed *pro se,* Barfield was properly informed of his constitutional right to represent himself at trial pursuant to *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). The court subsequently appointed Charles Morgan, the attorney who had represented Barfield during the pretrial proceedings, to serve as standby counsel pursuant to *McKaskle v. Wiggins,* 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984).[5] Appellant is unable to offer any support for his contention that the court had a duty to instruct Barfield that the assistance of standby counsel was available to him during voir dire. Indeed, it is well settled that a trial judge is under no heightened obligation to assist a defendant who chooses to represent himself or herself in a criminal case. *United States v. Merrill,* 746 F.2d 458, 465 (9th Cir.1984), *cert. denied,* 469 U.S. 1165, 105 S.Ct. 926, 83 L.Ed.2d 938 (1985); *Birl v. Estelle,* 660 F.2d 592, 593 (5th Cir.1981) (citing *United States v. Pinkey,* 548 F.2d 305, 311 (10th Cir.1977)). Barfield is not challenging his waiver of the right to counsel at trial. He cannot, therefore, maintain the claim that the court's failure to remind him of the role of standby counsel deprived him of the assistance of counsel during voir dire because he waived that right when the court granted his motion to proceed *pro se.*

## V.

■ Finally, Barfield asserts that the district court erred by denying his motion for judgment of acquittal at the conclusion of the government's case. He argues that the government failed to prove the defendant's sanity beyond a reasonable doubt. A motion for judgment of acquittal must be denied if, after viewing the evidence in the light most favorable to the government, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Because Barfield committed these offenses in August, 1984, the Insanity Defense Reform Act of 1984 ("IDRA") does not apply.[6] Under pre–IDRA law, once the defendant produces slight evidence to weaken the presumption of sanity, the burden "is upon the government to prove beyond a reasonable doubt that the defendant is legally responsible for his actions." *United States v. Brown,* 792 F.2d 466, 469 (4th Cir.1986); *United States v. Marable,* 657 F.2d 75, 76 (4th Cir.1981). We also held that "[b]oth lay and expert testimony can be used to raise the issue of insanity." *Id.* (citing *United States v. Hartfield,* 513 F.2d 254, 260 (9th Cir.1975)).

■ In support of his insanity defense, the record reveals that Barfield called two expert witnesses who testified on both direct and cross examination that Barfield had originally tried to mislead his doctors about his putative mental incapacity. After extensive observation, though, both experts concluded that Barfield was competent at the time of the offense and competent to stand trial. Because this testimony undermined, rather than supported, the defendant's insanity defense, it cannot consti-

---

5. In *McKaskle,* the Supreme Court stated that "[a] defendant does not have a constitutional right to receive personal instruction from the trial judge on courtroom procedure. Nor does the Constitution require judges to take over chores for a *pro se* defendant that would normally be attended to by trained counsel as a matter of course." 465 U.S. at 184, 104 S.Ct. at 954.

6. In its *Handbook on the Comprehensive Crime Control Act of 1984,* the Department of Justice states that certain sections of IDRA, including the statutory standard, the burden of proof provisions, the automatic commitment procedures of 18 U.S.C. § 4243, and the use of the special verdict in 18 U.S.C. § 4242, do not apply to conduct which occurred before October 12, 1984, the effective date of the statute. *Handbook* at 65 (citing *Dobbert v. Florida,* 432 U.S. 282, 292, 97 S.Ct. 2290, 2297, 53 L.Ed.2d 344 (1977); *Beazell v. Ohio,* 269 U.S. 167, 169–70, 46 S.Ct. 68, 68–69, 70 L.Ed. 216 (1925); *United States v. Williams,* 475 F.2d 355 (D.C.Cir.1973)).

tute the "slight" evidence of the defendant's insanity necessary to shift the burden of proof to the government under *Brown.* Even assuming, however, that Barfield did produce the requisite quantum of evidence, the testimony of the doctors who examined the defendant was a sufficient basis upon which the jury could have found beyond a reasonable doubt that the defendant was legally responsible for his actions. In addition, Barfield's able representation of himself at trial was further evidence of his sanity. Clearly, then, the record evidence supported the conclusion that Barfield was not insane, and the district court properly denied the motion for judgment of acquittal.

Appellant's conviction is hereby affirmed.

*AFFIRMED.*