30 F.3d 132
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ronald Stephen WHITE, Defendant-Appellant.
 No. 93-5429.
 United States Court of Appeals, Fourth Circuit.
 Argued March 11, 1994.
Decided July 20, 1994.
 
 Appeal from the United States District Court for the Western District of Virginia, at Charlottesville. James H. Michael, Jr., District Judge. (CR-91-31, CR-92-34)
 Richard Andrew Davis, Charlottesville, VA, for appellant.
 Kenneth Martin Sorenson, Assistant United States Attorney, Roanoke, VA, for Appellee.
 Robert P. Crouch, Jr., United States Attorney, Roanoke, VA, for appellee.
 W.D.Va.
 AFFIRMED.
 Before RUSSELL and WIDENER, Circuit Judges, and CHAPMAN, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 A jury rejected defendant-appellant Ronald Stephen White's asserted defense of insanity and convicted him of bank robbery and carrying a firearm during a bank robbery. White appeals. We affirm.
 
 I.
 
 2
 On February 8, 1991, a masked individual, armed with a shotgun, robbed a branch of the Jefferson National Bank in Charlottesville, Virginia, of $25,375.00 in United States currency. Law enforcement authorities apprehended White several miles from the site of the robbery. Upon his arrest, White freely admitted committing the robbery.
 
 
 3
 A grand jury indicted White on charges of bank robbery and of using a firearm during commission of a bank robbery. White pled not guilty to the charges against him by reason of insanity.[1] The sole issue of fact at trial concerned White's mental status at the time of the bank robbery. White testified at length at trial to his motives, preparation and actions. White's girlfriend gave a lay opinion that White was not in his right state of mind at the time of the bank robbery. No expert testified as to White's mental condition at the time of the robbery.
 
 
 4
 A jury convicted White on both counts.
 
 II.
 
 5
 White argues that there is insufficient evidence to support the jury's rejection of his claim that he was "not guilty by reason of insanity." We disagree.
 
 
 6
 Congress has defined the insanity defense by statute:
 
 
 7
 (a) Affirmative defense.--It is an affirmative defense to a prosecution under any Federal statute that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect was unable to appreciate the nature and quality or the wrongfulness of his acts.....
 
 
 8
 (b) Burden of proof.--The defendant has the burden of proving the defense of insanity by clear and convincing evidence.
 
 18 U.S.C. Sec. 17.[2]
 
 9
 In reviewing White's sufficiency of the evidence challenge, we must examine the evidence in the light most favorable to the government and determine whether a factfinder would necessarily be irrational if it rejected White's insanity defense. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Barfield, 969 F.2d 1554, 1558 (4th Cir.1992).
 
 
 10
 Overwhelming evidence establishes that White was able to appreciate the nature, quality and wrongfulness of his acts at the time of the commission of the crimes alleged. White planned the robbery for "[p]robably a couple of months," J.A. 232; White "cased" two or three banks before settling on the particular bank he would rob, based, at least in part, on the ease with which he could there conceal his car; White wore a mask while perpetrating the robbery and, following the crime, changed into different clothes he had brought along for that purpose; witnesses described White as having conducted the robbery in a calm and orderly manner; White had excellent recall of the events leading up to, and during, and following, the robbery; and White attempted to escape when spotted by the police following the robbery. White's rational state of mind at the time of the robbery is aptly demonstrated by the following excerpt from White's cross-examination:
 
 
 11
 Q. Mr. White, you committed that bank robbery and knew it was a violation of the law to do so; isn't that true?
 
 
 12
 A. I did.
 
 
 13
 Q. And you committed that bank robbery because you needed the money; isn't that true?
 
 
 14
 A. Yes.
 
 
 15
 Q. Now, you have testified here on direct examine[sic] that you committed the bank robbery also to kind of tweak the federal government's nose; is that true?
 
 
 16
 A. That's correct.
 
 
 17
 Q. Was it to tweak the federal government's nose or was it to get money, which one?
 
 
 18
 A. Both.
 
 
 19
 Q. Both. Kind of figured you could pick up some money on the side and also get a slap at Uncle Sam?
 
 
 20
 A. Pick up money to survive.
 
 
 21
 * * * *
 
 
 22
 Q.... Now, you knew what you were doing that day was wrong, didn't you?
 
 
 23
 A. I knew that it's wrong in the Government's eyes.
 
 
 24
 Q. And that's why you took so much effort in concealing your identity and planning your escape; is that correct?
 
 
 25
 A. The purpose was to get money so I could survive, and the only way to do that was to insure [sic] the success of the robbery.
 
 
 26
 J.A. 245-47.
 
 
 27
 White contends that "the sole direct evidence concerning [his] state of mind at the time of the offense was that he was not in his right mind." Appellant's Br. 18. White cites to the testimony of his girlfriend, who testified that she didn't "believe he was in his right mind. He had tunnel vision." J.A. 264. While White testified as to prior episodes of alleged mental problems and as to the potential of a family history of medical problems,[3] none of this evidence tended to refute the government's showing that White was sane when he committed the crimes charged.
 
 
 28
 In short, viewing the evidence in the light most favorable to the government, there is sufficient evidence to support a conclusion that White was not insane when he committed the crimes at issue here.
 
 III.
 
 29
 White challenges the admissibility of portions of his own testimony on the ground of hearsay and on the ground that the testimony was inadmissible under Federal Rule of Evidence 704(b). In particular, on cross-examination, the prosecution questioned White with regard to a prior mental status evaluations he had received:
 
 
 30
 Q. Do you recall being examined ... in March of 1992?
 
 
 31
 A. Yes.
 
 
 32
 Q. And do you recall who did the examination?
 
 
 33
 A. Doctor Miller.
 
 
 34
 Q. Do you recall what the results of that examination were?
 
 
 35
 A. Yes, that in his opinion that I was not suffering from a mental disease.
 
 
 36
 J.A. 230 (emphasis added). With regard to a report prepared by another doctor, also in 1992, the following colloquy ensued:
 
 
 37
 Q. You're aware that the report finds that you were sane at the time of the commission of the offense, aren't you?
 
 
 38
 A. Generally, yes. The way my lawyer explained it to me was that it was not--it was in that direction, yes.
 
 
 39
 Q. You're aware that he found that you were both competent and responsible at the time of the commission of the offense?
 
 
 40
 A. I assume that's what he meant.
 
 
 41
 J.A. 231.
 
 Federal Rule of Evidence 704(b) provides:
 
 42
 No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or a defense thereto. Such ultimate issues are matters of fact for the trier of fact alone.
 
 
 43
 "Rule 704(b) was enacted in the wake of the attempted assassination of President Reagan and the murder of John Lennon, and was an attempt to constrain psychiatric testimony on behalf of defendants asserting the insanity defense." United States v. Gastiaburo, 16 F.3d 582, 588 (4th Cir.1994), petition for cert. filed, (U.S. Apr. 29, 1994) (No. 93-8903).
 
 
 44
 Defense counsel objected to the line of questioning pursued by the prosecution on hearsay grounds only, and did not raise an objection based upon Rule 704(b). The district judge overruled what objections defense counsel did make. On appeal, White argues that, despite the language of Rule 704(b) indicating that Rule 704(b) bars only the actual testimony of an expert as to the ultimate question of the defendant's sanity, the rule also bars the defendant's testimony as to his knowledge of an expert's opinion on the matter.
 
 
 45
 We find that any error in admitting this evidence was harmless. As discussed above, the evidence at trial overwhelmingly indicated that White was sane at the time of the commission of the alleged crimes. We are satisfied that the inclusion of the challenged testimony in no way swayed the jury's verdict. See Fed.R.Crim.P. 52(a).
 
 IV.
 
 46
 We find no merit in the remaining claims raised by counsel for White. White's counsel also purported to invoke Anders v. California, 386 U.S. 738 (1967).[4] This invocation was improper: Anders is properly invoked only where counsel for appellant moves for leave to withdraw and certifies that he can identify no non-frivolous ground for appeal. See Anders, 386 U.S. at 744. Here, of course, defense counsel has identified several assignments of error and argued them on appeal. Despite this shortcoming, we have examined the supplemental brief submitted by White pro se and we have conducted an independent review of the entire record. We are satisfied as to the propriety of White's conviction.[5]
 
 AFFIRMED
 
 
 [1]
 White had previously pled guilty to both counts, but the district court granted his motion to withdraw those pleas
 
 
 [2]
 Relying upon our decisions in United States v. Gould, 741 F.2d 45, 47 (4th Cir.1984), and United States v. Chandler, 393 F.2d 920, 926 (4th Cir.1968) (en banc), the government contends that this Circuit follows the American Law Institute test for insanity. Both Gould and Chandler predate the Insanity Defense Reform of Act of 1984, Pub.L. No. 98-473, 98 Stat.2057, which enacted 18 U.S.C. Sec. 17. We note that the district court properly instructed the jury in accordance with the language of section 17
 
 
 [3]
 For example, White testified that, when he was 18 years old, his wife left him prompting White to attempt suicide, and that his mother lived in a mental institution during the final years of her life. White also testified that, following a criminal conviction for a federal offense in the 1960's, a psychiatric evaluation resulted in a recommendation that White serve a suspended sentence and probation. A judge apparently chose to reject this recommendation and sentenced White to a prison term. White testified that, as a result, he "lost somewhat respect for the federal government as far as their impartiality." J.A. 196. White further testified that, following the prison term, he suffered from unexplained nausea and dizziness over a 5-year period. White claims that the unfair treatment he claims to have received earlier from the federal government caused him to choose to rob a bank: White explained that he chose to rob a bank "[b]ecause a bank is federal, federal jurisdiction, and I don't have anything against the state or a convenience store." J.A. 224
 
 
 [4]
 Under the heading "DEFENDANT DOES NOT FEEL HIS CONVICTION WAS PROPER", White's counsel makes the following statement with regard to the nine grounds for appeal listed under the heading earlier in the brief as raised pursuant to Anders: Counsel has reviewed the record and set forth all possible errors he could divine. Counsel has received from White correspondence setting forth numerous issues to be raised without exercise of counsel's discretion. Counsel has included those issues above, and as follows. Counsel has furnished a copy of this brief and Appendix to defendant by mailing him a copy first-class and postage pre-paid. Counsel further certifies that he has advised defendant of his right to raise additional issues on appeal within a time set by the Court of Appeals
 Appellant's Br. 19. We subsequently granted White leave to file a pro se supplemental brief.
 
 
 [5]
 Our consideration of White's pro se brief and our independent review of the record in no way relieve White's counsel of any continuing duties he may owe to his client. See Anders, 386 U.S. at 744