**Garroll Seldon FUGATE, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**No. 1998–SC–0912–MR.**

Supreme Court of Kentucky.

Nov. 21, 2001.

**16**

Russell J. Baldani, Baldani, Rowland & Richardson, Lexington, Michael R. Campbell, Campbell & Rogers, Morehead, Counsel for Appellant.

A.B. Chandler, III, Attorney General, Anitria M. Franklin, Brian T. Judy, Assistant Attorneys General, Office of Attorney General, Criminal Appellate Division, Frankfort, Counsel for Appellee.

COOPER, Justice.

On July 8, 1995, two people were killed and a third injured when their vehicle was struck head-on by another vehicle being operated in the wrong lane of travel by Appellant, Garroll Seldon Fugate. Appellant's blood alcohol level was later determined to be 0.26g/100ml. Following a trial by jury in the Montgomery Circuit Court, Appellant was convicted of two counts of manslaughter in the second degree and one count of assault in the second degree. He was sentenced to ten years on each count to run consecutively for a total imprisonment of thirty years. He appeals to this Court as a matter of right, Ky. Const. § 110(2)(b), and asserts six claims of error, four with respect to his competency to stand trial and two with respect to evidentiary rulings at trial.

## I. COMPETENCY ISSUES.

*A. Trial judge's findings and conclusion.*

Appellant was severely injured in the accident, sustaining ankle, hip and fa-

cial fractures, a compression fracture of the T–9 vertebra, and a transection of his spinal cord at the T–10 level, resulting in permanent paraplegia. Appellant suffers from a rare condition known as "painful paraplegia," which causes him to suffer from chronic pain rather than no feeling at all below the level of the spinal cord injury. Appellant's primary care physician, Dr. Richard Hall, declined to express an opinion as to Appellant's competence to stand trial but did state that Appellant took prescription pain medication that occasionally caused him to be disoriented. On cross-examination, however, Dr. Hall admitted that Appellant understood the nature of his medical condition and that he was competent to make his own decisions with respect to future medical treatment.

Two psychologists testified at the competency hearing. Dr. Walter Powers, who had been appointed by the court to evaluate Appellant, opined that Appellant was competent to stand trial and that he was partially malingering and exaggerating his alleged mental deficiencies. Dr. Powers based his conclusions not only on his own examination, but also on interviews with nursing home attendants who observed Appellant on a daily basis and a neuropsychological evaluation performed by another psychologist at Dr. Powers' request. Several of the nursing home employees testified that Appellant read books, watched television, conversed normally with other patients, participated in group activities, used a laptop computer, and frequented the smoking lounge where he often played checkers. One nursing home employee testified that Appellant would engage in normal conversations with her when they were alone, but if outsiders were present, he would commence to stutter and claim to be disoriented. Another testified that Appellant always addressed her by name except on one occasion when she came to his room while he was being interviewed by an unidentified man. On that occasion, Appellant claimed not to know her. Dr. Suzanne Johnson, who was retained by Appellant to evaluate his competency to stand trial, opined that Appellant was incompetent to stand trial and that he was neither malingering nor exaggerating. Her testimony was supported by that of Appellant's sister.

In concluding that Appellant was competent to stand trial, the trial judge made extensive findings of fact with respect to the evidence and found the testimonies of Dr. Powers and the nursing home employees to be more persuasive. Since the trial judge's conclusion was supported by substantial evidence, it was not clearly erroneous. *Plumb v. Commonwealth,* Ky., 490 S.W.2d 729, 731 (1973).

*B. Appellant's absence from the competency hearing.*

■ Appellant claims it was reversible error to conduct the competency hearing in his absence. The hearing was held on October 2, 1997, at the courthouse in Mt. Sterling, Montgomery County, Kentucky. On that date, Appellant was a medicated, mostly bedfast patient at a nursing home in Frenchburg, Menifee County, Kentucky. Defense counsel explicitly waived Appellant's presence at the hearing, explaining:

> In my opinion, it would endanger him to try to move him. It would certainly place him in a great deal of pain to try to move him over here for this hearing.

Appellant does not contest the accuracy of this statement and does not claim that his attorney was acting without his authorization. Nor does he suggest how he was actually prejudiced by his absence from the hearing. He does not assert that his counsel inadequately presented the evidence in his behalf or inadequately cross-examined the witnesses for the Commonwealth. He does not describe how he

could have assisted counsel or what additional testimony he would have presented so as to avoid the judge's ultimate determination that he was competent to stand trial. In fact, Appellant's ability to provide such assistance might well have prejudiced his claim of incompetency, *i.e.*, that he lacked the capacity to appreciate the nature and consequences of the proceedings against him or to participate rationally in his defense. In other words, his ability to assist his counsel at the hearing may well have proved the Commonwealth's contention that he *was* competent to stand trial. The sum and substance of Appellant's claim with respect to this issue is that there should be a bright line rule that no one can waive a defendant's right to be present at his own competency hearing except the defendant, him/herself.

■ "[T]he right to be present at every critical stage of the trial," RCr 8.28(1), protects a defendant against purposeful or involuntary exclusion, *e.g.*, *Price v. Commonwealth*, Ky., 31 S.W.3d 885, 892 (2000), but not voluntary exclusion. Even "[t]he most basic rights of criminal defendants are ... subject to waiver." *New York v. Hill*, 528 U.S. 110, 114, 120 S.Ct. 659, 663, 145 L.Ed.2d 560 (2000) (quoting *Peretz v. United States*, 501 U.S. 923, 936, 111 S.Ct. 2661, 2669, 115 L.Ed.2d 808 (1991)). Although it would be preferable that the waiver come directly from the defendant, himself, there is no constitutional requirement to that effect. *Clark v. Stinson*, 214 F.3d 315, 324 (2nd Cir.2000), *cert. denied*, 531 U.S. 1116, 121 S.Ct. 865, 148 L.Ed.2d 778 (2001); *Polizzi v. United States*, 926 F.2d 1311, 1322 (2d Cir.1991), *cert. denied*, *sub nom.*, *Palazzolo v. United States*, 495 U.S. 933, 110 S.Ct. 2175, 109 L.Ed.2d 504 (1990). Unlike RCr 9.26, which requires that waiver of the right to trial by jury be in writing, there is no rule or statute specifying the proper method for waiving the right to be present at every critical stage of the trial.

In *Richmond v. Commonwealth*, Ky., 637 S.W.2d 642 (1982), this Court unanimously held that an attorney could waive a defendant's right to attend a pretrial deposition that would be used as testimony against him at trial (as opposed to here, where none of the testimony elicited at the competency hearing was used at trial). Although it is asserted that it was the defendant in *Richmond*, not his attorney, who waived his right to be present at the deposition, the opinion does not support that assertion.

> Richmond himself was not present, but it is abundantly clear that he could have been *if his attorney had so chosen*.

*Id.* at 644 (emphasis added).

■ Appellant primarily relies on the plurality opinion in *Dean v. Commonwealth*, Ky., 777 S.W.2d 900 (1989). *Dean* does not mention *Richmond*, much less purport to overrule it. And suffice it to say that "[a] minority opinion has no binding precedential value ... [and] if a majority of the court agreed on a decision in the case, but less than a majority could agree on the reasoning for that decision, the decision has no stare decisis effect." *Ware v. Commonwealth*, Ky., 47 S.W.3d 333, 335 (2001) (quoting 20 Am.Jur.2d, *Courts*, § 159 (1995)).

Nor do the other cases cited by Appellant support his proposition. *Sturgis v. Goldsmith*, 796 F.2d 1103 (9th Cir.1986), only held that the defendant had a right to be present at his competency hearing but did not address the issue of waiver of that right. *Hill v. Commonwealth*, Ky., 474 S.W.2d 95 (1971), did not involve a competency hearing, but a post-trial evidentiary hearing at which twenty-eight witnesses testified with respect to the merits of the defendant's post-trial motions. The defendant and her counsel were not notified of

the hearing and did not attend. The trial judge denominated the hearing a "court of inquiry." When an associate of the defendant's attorney learned of the *ex parte* proceedings and requested an opportunity to cross-examine the witnesses, his request was denied on grounds that the hearing was an "investigation, not a trial." *Id.* at 98. That is a far cry from a failure to appear at a hearing pursuant to an explicit waiver by counsel on grounds of a debilitating physical disability.

Appellant cites *Conley v. Commonwealth*, Ky.App., 569 S.W.2d 682 (1978), for the proposition that an "accused has the right to be present and to cross-examine witnesses," but *Conley* was referring to "courts of inquiry" and "lunacy inquests."

> There was no court of inquiry or lunacy inquest involved in this action. Appellant was not about to lose his liberty by being involuntarily committed to a mental institution.

*Id.* at 685. The holding of the Court of Appeals on this issue was that Appellant was not entitled to a hearing on his competency to enter a guilty plea because "[t]he trial judge had no 'reasonable doubt' concerning appellant's sanity to stand trial or to plead guilty." *Id.* at 686. *Conley* did not involve an issue of voluntary waiver.

In *Cross v. United States*, 325 F.2d 629 (D.C.Cir.1963), the defendant was present at the beginning of his trial, then voluntarily absented himself from the courtroom, but remained in custody in an adjacent United States Marshal's office. *Cross* merely holds that the judge should have determined whether the defendant's absence was voluntary. "The Government does not attempt to explain how, under Rule 43 [F.R.Cr.R. 43 is virtually identical to RCr 8.28], a person in continuing physical custody can 'voluntarily absent' himself." *Id.* at 631.

None of these cases support the proposition that defense counsel cannot waive his client's presence at a pretrial competency hearing. Thus, the crux of this issue is whether we should follow our unanimous opinion in *Richmond* or the plurality opinion in *Dean*. We conclude that Justice Leibson's dissent on this issue in *Dean* makes far more sense than the inflexible rule urged by Appellant in this case:

> Here, the waiver was explicit, and was made by counsel, presumably competent to judge whether his client was needed. I see no reason, constitutional or otherwise, to create a rule that counsel cannot waive his client's presence at depositions [or, as here, at a pretrial competency hearing].

*Dean v. Commonwealth, supra*, at 910 (Leibson, J., concurring in part).

*C. Failure to hold a second competency hearing.*

■ Because Appellant was admitted to the University of Cincinnati Hospital on May 8, 1998, his trial was rescheduled from May 19 until June 1, 1998. On the morning of trial, Appellant moved for another continuance for the purpose of obtaining a new competency evaluation. The request was denied. The trial judge stated on the record that he had personally contacted Appellant's attending physician at the hospital and had been assured that Appellant was physically able to attend trial, so long as oxygen was available to him. (Oxygen was available but was not used.) The hospital records introduced in support of the motion for continuance reflect an admission diagnosis of hypoxia. The only references in the records to Appellant's mental status were "alert, oriented" and "little recollection of what happened earlier today." It appears that Appellant was kept overnight and discharged the next day. Under these facts, the trial judge did not abuse his discre-

tion in overruling the motion for a continuance so that another competency evaluation could be obtained. *Crawford v. Commonwealth*, Ky., 824 S.W.2d 847, 850–51 (1992); *Mozee v. Commonwealth*, Ky., 769 S.W.2d 757, 759 (1989); *Pate v. Commonwealth*, Ky., 769 S.W.2d 46, 48 (1989).

*D. Defense counsel's request to videotape the trial.*

█ The Montgomery Circuit Court courtroom was not video-equipped at the time of this trial. The proceedings were recorded and transcribed by the official court reporter. Appellant requested that his privately retained cameraman be permitted to videotape the entire trial so that his inability to assist his attorney at trial could be demonstrated and preserved for appellate review. The trial judge allowed the cameraman to videotape Appellant during recesses but not while the trial was in progress.

█ A judge has a right and obligation to maintain control over his own courtroom so as to minimize or prevent activities that might distract the jurors during the course of the trial. *Wilson v. Commonwealth*, Ky., 836 S.W.2d 872, 884–85 (1992), *cert. denied*, 507 U.S. 1034, 113 S.Ct. 1857, 123 L.Ed.2d 479 (1993); *Preston v. Commonwealth*, Ky., 406 S.W.2d 398, 404–05 (1966). Generally, whether to permit cameras in the courtroom is within the sound discretion of the trial court. 75 Am.Jur.2d, *Trial*, § 198 (1991). SCR 4.310 (Appendix) specifies restrictions with respect to the use of cameras in the courtroom during trial and specifically provides that any such unofficial recordings shall not be admissible upon any appeal of such proceedings. *Id.* § 7. The trial judge did not abuse his discretion in limiting Appellant's privately retained cameraman to videotaping inside the courtroom only during trial recesses.

## II. EVIDENTIARY ISSUES.

*A. Admission of evidence of blood alcohol presumption.*

█ The Kentucky State Police trooper who investigated the accident testified over objection that the blood alcohol level for which a state trooper will customarily make an arrest for driving under the influence of alcohol is "per se, point one" (meaning 0.10). Evidence as to the amount of blood alcohol content necessary to establish a presumption of intoxication is inadmissible in the trial of any criminal offense other than a violation of KRS 189A.010. *Walden v. Commonwealth*, Ky., 805 S.W.2d 102, 103 (1991), *overruled on other grounds*, *Commonwealth v. Burge*, Ky., 947 S.W.2d 805 (1996); *Overstreet v. Commonwealth*, Ky., 522 S.W.2d 178, 179 (1975); *Cormney v. Commonwealth*, Ky. App., 943 S.W.2d 629, 634 (1996). In each of the cited cases, however, the error was deemed harmless because there was ample other evidence that the defendant was intoxicated at the time of the collision.

Although the testimony of the investigating officer in this case technically did not inform the jury of the minimum blood alcohol content necessary to trigger the presumption of intoxication, it was close enough. But, as in the cited cases, there was also sufficient additional evidence of Appellant's intoxication to render this testimony harmless. RCr 9.24. The investigating officer testified that full and empty beer cans were found in Appellant's truck and on the ground around it at the scene of the collision. Blood drawn from Appellant after he was taken to the hospital revealed a blood alcohol content of 0.26. A waitress at a local restaurant who served Appellant shortly before the accident testified that his speech was slurred and that he was unsteady on his feet. Another

witness testified that he encountered Appellant on the highway and that Appellant was driving so erratically that the witness believed he was drunk. Another witness testified that he was forced off the road when he encountered Appellant's vehicle being driven in the wrong lane of travel, and of course, Appellant's vehicle was still in the wrong lane of travel when it struck the vehicle occupied by the three victims.

*B. Exclusion of evidence of Appellant's physical condition.*

 During the penalty phase of the trial, Appellant proffered evidence as to his physical condition and resultant reduced life expectancy as evidence in mitigation of the penalty in this case. On the date this case was tried, KRS 532.055(2)(b) provided:

The defendant may introduce evidence in mitigation. For purposes of this section, mitigating evidence means evidence that the accused has no significant history of criminal activity which may qualify him for leniency. This section shall not preclude the introduction of evidence which negates any evidence introduced by the Commonwealth.

Since the evidence of Appellant's physical condition and life expectancy did not relate to his history of criminal activity and did not negate any penalty phase evidence offered by the Commonwealth, it was excluded by the trial judge.

Effective July 15, 1998, KRS 532.055(2)(b) was amended to read as follows:

The defendant may introduce evidence in mitigation or in support of leniency. 1998 Ky. Acts, ch. 606, § 111.

Appellant asserts that this statute should have been applied retroactively to permit the introduction of the excluded evidence in support of leniency. KRS 446.110 allows mitigating provisions of new laws to be applied retroactively if the affected party consents. Thus, in *Commonwealth v. Phon*, Ky., 17 S.W.3d 106 (2000), we affirmed the imposition of a sentence of life without parole in a case where the crime was committed prior to the effective date of the amendment of KRS 532.030(1), but the sentence was imposed after that date. Here, the sentencing hearing was held before the effective date of the amendment to KRS 532.055(2)(b); thus, there was no amendment in effect that could be retroactively applied.

Accordingly, the judgments of conviction and sentences imposed by the Montgomery Circuit Court are affirmed.

LAMBERT, C.J.; GRAVES, JOHNSTONE and WINTERSHEIMER, JJ., concur.

KELLER, J., dissents by separate opinion with STUMBO, J., joining that dissenting opinion.

KELLER, Justice, Dissenting.

With a profound sense of deja vu,[1] I write separately to express my opinion that the trial court erred when it conducted a pretrial competency hearing in Appellant's absence without ascertaining whether Appellant himself knowingly, vol-

---

1. Approximately two (2) years ago, on November 18, 1999, this Court rendered an unpublished opinion in this case that, just like today's majority opinion, affirmed the trial court's judgment. I dissented then on the same grounds I dissent today, and I was joined in dissent by two (2) of my colleagues.

On February 24, 2000, the Court unanimously granted Appellant's Petition for Rehearing and withdrew its original opinion. On September 20, 2000, the parties orally argued the case before the Court. Today, we again affirm the trial court. The passage of time has not changed my opinion in this case.

untarily, and intelligently waived his right to appear.

First, I wish to emphasize that it is beyond dispute that a pretrial competency hearing is a "critical stage of the trial"[2] at which a defendant has the right to be present. In my opinion, the process of defining the source and scope of a defendant's right to be present at pretrial competency hearings illustrates the fallacy in the majority's conclusion that a third party can waive this right. Authority from other jurisdictions interpreting the United States Constitution[3] as well as Kentucky precedent interpreting our own Constitution strongly support the view that defendants have a personal right to be present at pretrial competency hearings. Our predecessor Court held in *Hill v. Commonwealth*[4] that Kentucky Constitution § 11 entitles defendants to be present at all evidentiary hearings:

> We believe the procedure as used here violates the rights of the accused set out in Section 11 of the Constitution of Kentucky. Anytime a trial court conducts an evidentiary hearing for the purpose of ascertaining facts upon which it is to base a ruling, certainly all parties have

the fundamental right to be present and to cross-examine the witnesses.[5]

In *Conley v. Commonwealth*,[6] Appellant claimed an entitlement to RCr 11.42 relief because the trial court failed to conduct a hearing on the defendant's competency to stand trial. The Court of Appeals denied relief on preservation grounds,[7] but noted, "[i]t is true that when such 'hearings' are conducted, the accused has the right to be present and to cross-examine the witnesses."[8]

The potential consequences that stem from a trial court's ruling as to a defendant's competency to stand trial further support the conclusion that a defendant has a constitutional right to be present at those proceedings. Due process guarantees require the defendant's presence whenever "important decisions are being made relating to one's liberty."[9] For example, Section Eleven of the Kentucky Constitution guarantees the respondent the right to be present for a quasi-criminal "lunacy inquest."[10] Pretrial competency hearings involve the same interests and a ruling on a defendant's competency to stand trial necessarily constitutes an "im-

2. RCr 8.28.

3. *See Sturgis v. Goldsmith*, 796 F.2d 1103, 1108 (9th Cir.1986), cert. denied, 508 U.S. 918, 113 S.Ct. 2362, 124 L.Ed.2d 269 (1993):

 A competency hearing is intricately linked to the fullness of a defendant's ability to defend against the charge. Its function is to ensure that no defendant is subjected to trial if his "mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense." Recognizing the constitutional dimensions of the competency hearing is not a novel undertaking.

 (citations omitted); *United States v. Barfield*, 969 F.2d 1554, 1556 (4th Cir.1992); *United States v. Swanson*, 572 F.2d 523, 526 n. 3 (1978), cert. denied, 439 U.S. 849, 99 S.Ct.

152, 58 L.Ed.2d 152 (1978); *White v. State*, 990 P.2d 253, 264–5 (Okla.Crim.App.1999).

4. Ky., 474 S.W.2d 99 (1971).

5. *Id* at 99.

6. Ky.App., 569 S.W.2d 682 (1978).

7. *Id.* at 685.

8. *Id.* (citations deleted).

9. *Franklin v. Commonwealth*, Ky., 490 S.W.2d 148, 150 (1972).

10. *Denton v. Commonwealth*, 383 S.W.2d 681, 683 (1964). "Lunacy inquests" are now called "Involuntary Hospitalization of the Mentally Ill" and governed by KRS Chapter 202A.

portant decision." If the trial court finds the defendant is competent to stand trial, he or she faces the possibility of criminal punishments .[11] If, however, the trial court finds the defendant is not competent to stand trial, that finding automatically results in a loss of liberty because the trial court must either order a sixty day commitment or conduct an involuntary hospitalization proceeding.[12]

With the understanding that defendants have the right to be present at competency hearings, the issue before the Court thus becomes whether Appellant waived his right to be present at the pretrial competency hearing conducted in his case. The only "waiver" reflected in the record came from Appellant's counsel upon inquiry by the trial court as to Appellant's absence:

> Trial Court: The other thing is, is Mr. Fugate here?
>
> Defense Counsel: No, sir, Your Honor.
>
> Trial Court: Okay—you will waive his presence then, with regard to this hearing?
>
> Defense Counsel: Yes, sir, I would have to waive his presence, at this time.
>
> Trial Court: Alright.

> Defense Counsel: In my opinion, it would endanger him to try to move him. It would certainly place him in a great deal of pain, to try to move him over here for this hearing.
>
> Trial Court: Okay.
>
> Defense Counsel: That's just my opinion. That's my call. So, yes, I will go on the record—I will waive his presence at this hearing.
>
> Trial Court: Okay—the Commonwealth doesn't have any problem with that?
>
> Commonwealth: Not as long as it's a knowing and equivocal—a knowing and unequivocal waiver by counsel.
>
> Trial Court: Okay—I would say that since Mr. Campbell [defense counsel] said it's known and—
>
> Commonwealth: That's fine.
>
> Trial Court: Okay—let's take a ten minute break, and then, we will proceed.

Although the majority maintains that Appellant does not contest his attorney's explanations,[13] counsel's own words—"In *my* opinion" and "That's just *my* opinion. That's *my* call"—belie the contention that counsel's "waiver" followed consultation

11. KRS 504.110(3) ("If the court finds the defendant competent to stand trial, the court shall continue the proceedings against the defendant.").

12. *See* KRS 504.110:

(1) If the court finds the defendant incompetent to stand trial but there is a substantial probability he will attain competency in the foreseeable future, it *shall* commit the defendant to a treatment facility or a forensic psychiatric facility and order him to submit to treatment for sixty (60) days or until the psychologist or psychiatrist treating him finds him competent, whichever occurs first, except that if the defendant is charged with a felony, he shall be committed to a forensic psychiatric facility unless the secretary of the Cabinet for Health Services or the secre-

tary's designee determines that the defendant shall be treated in another Cabinet for Health Services facility. Within ten (10) days of that time, the court shall hold another hearing to determine whether or not the defendant is competent to stand trial.

(2) If the court finds the defendant incompetent to stand trial but there is no substantial probability he will attain competency in the foreseeable future, it *shall* conduct an involuntary hospitalization proceeding under KRS Chapter 202A or 202B.

(emphasis added).

13. Majority Opinion at 62 S.W.3d 15, 18 (2001) ("Appellant does not contest the accuracy of this statement and does not claim that his attorney was acting without authorization.").

with Appellant, and there is certainly no indication from the record that Appellant's counsel purported to communicate Appellant's own wishes or that he spoke with Appellant's authorization when he waived Appellant's right. Further, in his brief, Appellant specifically disputes both (1) that he participated in the decision to waive his right to be present and; (2) his attorney's medical necessity rationalization:

> In the present case, there is no suggestion that Appellant personally waived his presence at the competency hearing and the telephone deposition, or that he even knew that the proceedings were taking place. While acting out of concern for Appellant's medical condition, defense counsel made it clear that it was simply his *personal* opinion that it would be dangerous and painful for Appellant to be brought to the hearing.

Finally, I find it significant that, even during the competency hearing itself, where Appellant's physicians testified, Appellant's trial counsel did not introduce evidence to support his prior assertion that Appellant was physically incapable of being present.

I believe Fugate's counsel's unilateral waiver of Fugate's presence at the pretrial competency hearing was ineffective. Several United States Courts of Appeal have found waivers by counsel of a defendant's right to be present for trial proceedings ineffective,[14] and I agree with the United States Court of Appeals for the D.C. Circuit that trial courts should obtain such waivers from defendants in open court and on the record:

> On the subject of waiver, 'It has been pointed out that 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and that we 'do not presume acquiescence in the loss of fundamental rights.' This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused.' This means that where the defendant is available, 'the serious and weighty responsibility' of determining whether he wants to waive a constitutional right requires that he be brought before the court, advised of that right, and then permitted to make 'an intelligent and competent waiver.' This has been the uniform practice. In the District Court here waivers by defendants of the constitutional rights to indictment and to trial by jury are taken in open court in writing, signed by the defendant personally on forms prescribed for the purpose. Since the right to be present at trial is 'scarcely less important to the accused than the right of trial itself,' some such procedure is certainly indicated before a trial judge can determine whether the defendant has made an intelligent and competent waiver. *At least an on-the-record statement in open court by the defendant*

---

**14.** *See Proffitt v. Wainwright*, 706 F.2d 311, 312 (11th Cir.1983). cert. denied, 464 U.S. 1002, 1003, 104 S.Ct. 508, 78 L.Ed.2d 697 (1983) (competency hearing); *Larson v. Tansy*, 911 F.2d 392, 396 (10th Cir.1990) (jury instructions, summations, and verdict); *United States v. Gordon*, 829 F.2d 119, 125 (D.C.Cir.1987) (voir dire and impaneling of jury); *Cross v. United States*, 325 F.2d 629, 632–33 (D.C.Cir.1963). While a minority of federal courts have allowed a defendant's counsel to waive his client's right of presence, they have done so only where the evidence demonstrates that counsel consulted with the defendant prior to the waiver. *See Wilson v. Harris*, 595 F.2d 101, 104 (2nd Cir.1979); *United States v. Dunlap*, 577 F.2d 867, 868 (4th Cir.1978), cert. denied, 439 U.S. 858, 99 S.Ct. 174, 58 L.Ed.2d 166 (1978).

*himself should be required.*[15]

While I recognize that such a procedure may delay court proceedings in some cases, "in its absence it is difficult, if not impossible, to determine whether the defendant has knowingly and intelligently relinquished a known right,"[16] and, "[t]he slight additional burden on the criminal justice process wrought by a personal waiver requirement is more than offset by avoidance of lengthy appeals to determine whether the defendant's right to presence has been violated."[17] I find the logistical concerns raised by the Commonwealth[18] outweighed by the necessity of an accurate determination of whether a defendant knowingly and voluntarily wishes to waive his right to appear.

Although the majority is correct that a majority of this court has never held that a waiver by counsel is ineffective, the plurality opinion in *Dean v. Commonwealth,*[19] is squarely on point and recognizes that only the defendant him or herself can waive this right:

> We hold that because the right to be present and to confront is personal to the accused under Section 11 of the Kentucky Constitution . . . only the de-

fendant can waive this right. The waiver must be sufficiently clear "as to indicate a conscious intent." In the case at bar, appellant's counsel waived appellant's right to be present at the depositions of the two prosecution witnesses. There is no indication in the record that it was appellant's conscious intent to waive this right and his consequent right to cross-examination. Counsel's waiver being ineffective, there was no waiver.[20]

I recognize that *Dean* is not binding precedent because the view expressed in *Dean* did not represent a majority of the Court, and I do not claim that stare decisis requires this Court to follow *Dean* today. However, I find the reasoning in *Dean* not just persuasive, but compelling, and I note that today's majority makes no serious attempt to refute the merits of the conclusions reached by the *Dean* majority.

In contrast, I am not at all persuaded by the majority's conclusion that this Court authorized waivers by counsel in situations like the one before us in *Richmond v. Commonwealth.*[21] In *Richmond,* the Commonwealth's Attorney, defense counsel, and the trial judge made arrangements

---

**15.** *Cross v. United States, supra* note 14 at 632–633. *See also United States v. Gordon, supra* note 14 at 125 ("[I]t is clear that rather than permitting defense counsel to waive Gordon's right to presence, the court should have held an on-the-record hearing to advise Gordon of his right to be present at voir dire and obtained a personal waiver in open court.").

**16.** *United States v. Gordon, supra* note 14 at 126.

**17.** *Id.* at 125.

**18.** While the Commonwealth argues we should provide an exception for cases in which counsel waives the defendant's presence out of concerns for the defendant's physical well-being and where the defendant is physically unable to attend the hearing, we believe such an exception would replicate the uncertainty of any waiver by counsel. In

cases where counsel alleges that the defendant is physically unable to attend the hearing, trial courts should convene at a location convenient to the defendant and within the trial court's territorial jurisdiction, *see Wolfenbarger v. Commonwealth,* Ky.App., 936 S.W.2d 770, 773 (1996), for the purpose of determining, on the record, whether the defendant wishes to waive his right to appear. At a minimum, the trial court should conduct a recorded telephone conference to determine and establish a record of the defendant's wishes.

**19.** Ky., 777 S.W.2d 900 (1989).

**20.** *Id.* at 903 (citations omitted).

**21.** Ky., 637 S.W.2d 642 (1982).

to take the deposition of the defendant's wife, who was a reluctant witness for the Commonwealth in a cocaine trafficking case.[22] The trial judge overruled defense counsel's objection to the deposition testimony, and the parties took the deposition in the defendant's absence.[23] The *Richmond* majority implies that the defendant was advised in open court that the parties would take his wife's deposition, and this Court held that he had waived his right to be present by not appearing: ". . . obviously his absence was by choice. He could have been there. It is our opinion that he waived the right of confrontation." [24]

I find it difficult to find the *Richmond* holding applicable to the facts of this case. First, defense counsel in *Richmond* did not attempt to waive his client's appearance, and the issue before us in this case was not presented in *Richmond*. Second, despite the majority's best efforts to characterize Appellant's absence at the hearing as a "voluntary exclusion," there is no evidence in the record that Appellant's absence at the hearing was an intentional failure to appear. In fact, all of the evidence points to an opposite conclusion. As a result of the automobile accident which led to the charges against him, Appellant suffered a severed spinal cord injury which left him without the ability to walk. Appellant attended none of the pretrial proceedings. During the competency hearing itself, Appellant was a non-ambulatory medicated nursing home patient who could not transport himself to the hearing. It is a mistake for the majority to equate Appellant's attorney's decision to waive his client's presence with Richmond's deliberate no-show, and the majority opinion adopts mutually exclusive positions when, on the one hand, it concludes that Appellant was physically incapable of attending the hearing, but also characterizes Appellant's absence as a "voluntary exclusion." In any event, Appellant's convalescence restricted his autonomy in a manner tantamount to incarceration and, ordinarily, courts have given special scrutiny to waiver claims in similar situations.[25]

Clearly, this error would not warrant reversal if harmless.[26] Because of the constitutional nature of this error, however, the Commonwealth bears the burden of proving it harmless beyond a reasonable doubt.[27] After reviewing the testimony at the competency hearing, I do not believe the Commonwealth has satisfied this burden, and I cannot agree with the majority's analysis that Appellant's presence could only have contributed to the trial court's finding of competency. Specifically, I believe Appellant's involuntary absence from the competency hearing raises questions regarding the integrity of the process. As was the case in *Dean:*

> . . . [The Commonwealth's expert's] testimony . . . that appellant may have had a history of malingering in psychological and intelligence testing was particularly damaging to the defense.

22. *Id.* at 644.

23. *Id.*

24. *Id.* at 646.

25. *See United States v. Gordon, supra* note 14 at 125 ("The practice of obtaining open court waivers is, as we have noted, particularly warranted in cases like this where the defendant is not out on bail, but remains in custody and readily available to the court."); *Id.* n. 7 ("The distinction between custodial and noncustodial defendants is an important one."); *Larson v. Tansy, supra* note 14 at 397 ("[I]t is certainly more difficult to establish that a defendant in custody has waived his right to be present.").

26. *See* RCr 9.24.

27. *See Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

[This] testimony ... played a significant role in the overall weight of the evidence against Dean. It is impossible to predict with certainty what effect recognition of the appellant's right to be present and to confront these witnesses during their live testimony would have had in the outcome of the case. We cannot find the error harmless.[28]

Accordingly, I dissent from the majority opinion and I would remand the case to the trial court, as this Court has recently done in *Thompson v. Commonwealth*,[29] for the trial court to determine the practicality of conducting a retrospective competency hearing—with Appellant present this time, unless he personally waives his right to attend—and to either conduct a competency hearing or order a new trial.[30] If the trial court found that a retrospective competency hearing is practicable at this date, and further found following that evidentiary hearing that Appellant was competent to stand trial in 1998, the convictions should stand. If, however, the trial court found that Appellant was not competent to stand trial in 1998, it should vacate the convictions, and Appellant would be subject to retrial if now competent.

STUMBO, J., joins this dissent.

---

**28.** *Dean v. Commonwealth, supra* note 19 at 903.

**29.** Ky., 50 S.W.3d 204 (2001).

**30.** *Id.* at 208:
The trial court shall determine whether a retrospective competency hearing is permissible and, if necessary, conduct a competency hearing within 120 days from the entry of this Opinion and Order. If the trial court rules that a competency hearing is not possible, or if it determines that Thompson was not competent ... it shall enter an order granting a new trial pursuant to RCr 10.02. And, of course, Thompson shall not be retried until the trial court finds him competent to stand trial. If the trial court determines that a retrospective competency hearing is warranted, and further finds that Thompson was competent ... then it shall make findings of fact in support of this conclusion in its order, which shall be appealable by Thompson.